222 So.2d 849

**Michael Scott LAWLESS**

v.

**STEEL ERECTORS, INC., et al.**

No. 49307.

May 5, 1969.

Simon, Carroll, Fitzgerald & Fraser, Richard A. Fraser, Jr., Shreveport, for defendants-appellants-relators.

Hal V. Lyons, Shreveport, for plaintiff-appellee-respondent.

SUMMERS, Justice.

The question presented by this workmen's compensation claim is whether plaintiff is entitled to benefits for total and permanent disability or for impairment of the usefulness of a physical function. See La.R.S. 23:1221(2) and 23:1221(4) (p).

Plaintiff filed this suit on July 20, 1967, claiming total permanent disability, penalties and attorneys' fees for an injury he sustained on August 8, 1966 while in the employ of the defendant Steel Erectors, Inc. Judgment was rendered by the trial court awarding compensation for total per-

manent disability but rejecting the claim for penalties and attorneys' fees; on appeal the Second Circuit affirmed. 209 So.2d 749. We granted certiorari.

Plaintiff is a young man who was twenty years old when the accident occurred. He was employed as an ironworker by Steel Erectors, Inc., and when the accident occurred on August 8, 1966 he was doing structural iron work on the J. S. Clarke Junior High School in Shreveport. While he and John Broussard, a fellow employee, were lifting a steel column weighing approximately 300 pounds, plaintiff felt a pain in his back. In spite of this pain, plaintiff persisted in his work and together they lifted the column to their shoulders and walked with it about 15 feet, where plaintiff stepped over a form. Then, after walking another 5 or 10 feet, plaintiff again experienced a pain in his back, this time of such severity he was compelled to drop the column. Because of this incident he was unable to work any more that day and left the job site.

He was directed to report the injury to Dr. Fred L. Price who had him admitted to the Physicians and Surgeons Hospital for conservative care. X rays were taken and Dr. Price diagnosed the injury as a mild compression fracture of the eleventh and twelfth dorsal vertebras. After two days in the hospital plaintiff was released as able to return to work on August 15, 1966. Dr. Price promptly filed a written report of this injury, the diagnosis and treatment with defendants.

Plaintiff returned to his work with Steel Erectors, Inc., on the 15th of August and worked until the 9th of November. During this time he was not capable of doing the work he did previously because certain bending positions caused him intense back pain. At times this pain was so severe that it was necessary for plaintiff to leave the job.

On November 8 plaintiff returned to Dr. Price. X rays were again made on December 6. Plaintiff's condition was found to be unchanged, with pain persisting over the site of the old fractures. Muscle relaxants were prescribed and rest was recommended for a few days. On December 17 his symptoms were observed to have subsided.

Any attempts to lift heavy weights thereafter aggravated the pain in plaintiff's back and climbing exhausted him. However, his only training or skill was that of an ironworker and his financial obligations were predicated upon the high earnings of that trade; for these reasons he was compelled to continue working. Plaintiff's version of his inability to perform all of his duties and the pain he suffered at work is not entirely uncontradicted, but the evidence to the contrary is indirect, the main contradiction by one witness being circumstantial. Moreover, both the trial court and the Court of

Appeal accepted plaintiff's version of his suffering and disability and no manifest error is apparent which would lead us to a different conclusion. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963).

Since his injury plaintiff has worked on some jobs as foreman, a supervisory job considered to be light work. Also, he has sought and obtained work installing iron sheeting; this, too, is light work consisting mainly of layout, placement, alignment and fastening of sheet metal handled, for the most part, by apprentices.

Plaintiff's counsel wrote to ascertain the name of the compensation insurer on February 22, 1967 referring to plaintiff's claim for compensation against Steel Erectors, Inc. Counsel for plaintiff then referred him to Dr. Ray E. King an orthopaedic surgeon in Shreveport. Dr. King's examination revealed a minimal compression fracture of the eleventh and twelfth dorsal vertebral bodies and the first lumbar vertebral body, which were healed but a mild dorsal rounding of the lower thoracic spine and some weakness in the thoracic region resulted. Examination at this time also confirmed that plaintiff had difficulty doing heavy work requiring stooping, lifting and bending. In the doctor's opinion there would be a fifteen percent permanent residual disability to the body as a whole. Extensor exercises were recommended because Dr. King knew of no other treatment which was indicated at that time. He testi-fied that plaintiff would experience "bouts of pain" thereafter; and if such pain occurred while he was doing structural work with others at high altitudes, plaintiff's safety and the safety of his coworker would be endangered.

Then the defendant insurer requested that plaintiff see Dr. Willis J. Taylor an orthopaedic surgeon in Shreveport, who agreed plaintiff had a partial permanent disability not exceeding 15 percent of the body as a whole, but in his opinion, the disability would not preclude the performance of the type of work plaintiff was doing when injured.

On May 5, 1967 plaintiff again suffered unusually severe pain, nausea and dizziness when he picked up a small girt while working for G. L. Jennings. He was seen by Dr. F. T. Dienst, Jr. and Dr. King on that day. Dr. King ordered him to Schumpert Hospital for further study, believing that the pain was muscular. After two days of bed rest and continuing doses of muscle relaxants he improved and was discharged. By a later examination, on June 14, 1967, Dr. King found no increase of the wedging and was of the opinion plaintiff should be able to do ordinary manual labor.

It was found thereafter, when plaintiff continued to work, that he obtained relief from wearing a back brace and he was fitted for one. At some time after his injury and prior to the trial (the record does not reveal when) plaintiff was ad-

vanced to journeyman ironworker, a classification indicating his ability to perform all types of ironwork.

According to the testimony, ironworkers are required to serve an apprenticeship for 36 months and to attend school four hours each week during this time—a total of 6,000 hours of on-the-job training and school attendance. There are thirteen classifications of ironworkers, and, journeyman ironworkers cover all phases of the trade; they should be welders, structural hands, sheeters, etc., and they are especially expected to be able to do structural ironwork, which is traditionally the principal skill of an ironworker. Structural ironworkers are schooled primarily in the erection of structural steel, which involves shaping out and rigging of the steel frames of buildings by bolting, riveting or welding. Reinforcement ironworkers are required to place steel bars and rods in concrete forms and foundations; sheeters erect sheet iron on buildings; riggers set machinery, cable splicers splice cable, etc.

In summary, some of the work is light and some is heavy, but a journeyman ironworker is expected to do each of the many jobs included in his trade. His work with structural iron can hardly be classified as ordinary manual labor. And in a city the size of Shreveport an ironworker cannot hope to select the type work he will do. An injured worker seeking only light work will not obtain steady employment and, in time,

he will, in all probability, be routinely rejected from all jobs because of the limitations inherent in a physical impairment restricting him to light work only. Undoubtedly the structural steel and reinforcement work is heavy, requires the lifting of heavy weights, and, when reinforcement rods are being installed, much bending and twisting is essential.

Our appreciation of the evidence supports the result reached by the trial court and the Court of Appeal. Undoubtedly plaintiff did suffer pain at times which required him to leave his work. His wife testified that because of the pain he suffered he was compelled to take muscle relaxants and go to bed on many occasions when he returned from work. Dr. Price, Dr. King and Dr. Taylor agreed that a fifteen percent permanent disability has resulted from plaintiff's injury.

Because of this pain and the limitation in his back, plaintiff will be unable to perform the heavy work involved in erecting structural steel, installing iron reinforcements and similar duties required of an ironworker. Although he may be able to do a foreman's job or erect metal sheeting and other work classified as light work, he will be unable to fill all the jobs an ironworker is called upon to fill and, as a result, in time, his steady employment will be seriously affected, especially in Shreveport where there is a limited need for ironworkers. His ability to compete in the open

market with other ironworkers will thus be impaired. For obvious reasons the employer who has a choice will employ the ironworker capable of performing both heavy and light work in preference to one who is only able to do light work. Like the lawyer in Madison v. Prudential Insurance Company, 190 La. 103, 181 So. 871 (1938), an ironworker who is able to do only light work will soon find himself without light work to do.

Thus, as to the heavy work, we find that plaintiff's injury has brought about total permanent disability for which he would clearly be entitled to compensation, if only heavy work were involved, and, since heavy work is such an integral part of an ironworker's qualifications, plaintiff is, for all practical purposes, disabled from performing a substantial part of the duties of his trade.

Provisions of the Workmen's Compensation Act which are relevant to the question presented by this case are quoted from Title 23, Section 1221 of the Revised Statutes:

"Compensation shall be paid under this Chapter in accordance with the following schedule of payments:

\*    \*    \*    \*    \*    \*

"(2) For injury producing permanent total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not beyond four hundred weeks.

\*    \*    \*    \*    \*    \*

"(4). In the following cases the compensation shall be as follows:

\*    \*    \*    \*    \*    \*

"(p) In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and as in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-five per centum of wages during one hundred weeks."

On the facts which we have reviewed, we hold that Section 1221(4) (p) quoted above does not apply here. This injury does not simply involve the serious and permanent impairment of a physical function as defense counsel suggest. It is more. This back injury involves a definite disability, and since disabilities are not contemplated by Section 1221(4) (p) the injury must be otherwise classified under the Act. Malone, Louisiana Workmen's Compensation Law and Practice, Sec. 284 (1951). We have, therefore, classified the disability under Section 1221(2) for the reasons already stated and upon the authority to which we refer.

The test applied by the courts in determining permanent total disability is expressed in Lindsey v. Continental Casualty Company, 242 La. 694, 138 So.2d 543 (1962) in these words:

" * * * (A) skilled worker is deemed totally disabled within the intendment of the law if he is unable to do work of the same character as that which his training, education, and experience qualify him to perform, without unusual difficulty or danger. This rule is applicable to a skilled worker who cannot perform a substantial portion of the work incident to his special occupation." See also Olivier v. Liberty Mutual Insurance Co., 241 La. 745, 131 So.2d 50 (1961) and Brannon v. Zurich General Accident & Liability Insurance Co., 224 La. 161, 69 So.2d 1 (1953).

Recently in deciding another workmen's compensation claim strikingly similar to the instant case, the Second Circuit aptly observed:

"The lay testimony reflects an ironworker has numerous duties, many of which require lifting heavy objects and working at high altitudes. All of the duties performed by plaintiff after his injury were light in nature. He testified that when called upon to perform strenuous tasks he was forced to seek other employment because of the intense pain.

"An ironworker is a skilled employee. If he receives accidental injuries during the course and scope of his employment which render him unable to perform substantially all his duties except in pain, or without endangering himself or his co-workers, he is totally and permanently disabled under La.R.S. 23:1221(2) * *." Mercer v. Coal Operators Casualty Company, 212 So.2d 431 (La.App.1968).

The law does not expect, and it does not contemplate, that a worker, in order to make a living, must work in pain, or that he do so when it will materially increase the hazard to his health and safety or to the health and safety of his fellow employees. Brannon v. Zurich General Accident & Liability Insurance Co., 224 La. 161, 69 So.2d 1 (1953). See also Wallace v. Remington Rand, Inc., 229 La. 651, 86 So. 2d 522 (1956).

The judgment of the Court of Appeal is affirmed.