COLE, Judge.
This is a workmen’s compensation suit in which the lower court awarded benefits for total and permanent disability. Defendant-appellant, Morton International, Inc., had denied the occurrence of an accident and had alternatively pleaded that plaintiff-appellee, Lee Roy Miller, was able *56 to return to work and was thus not permanently and totally disabled.
In a well reasoned written opinion the trial judge found that an accident had occurred and that plaintiff was totally and permanently disabled. Our review of the record satisfies us that the trial judge committed no manifest error with regard to his findings of fact and conclusions drawn therefrom. We, accordingly, quote with approval the following excerpt from his Written Reasons for Judgment:
“Plaintiff testified that he wrenched his back while straightening up from a stooped position in which he was grinding some pipe at the defendant’s plant at Geismar, Louisiana, on July 16, 1969. Mr. Robert Terrell, a fellow employee, called on cross examination by the plaintiff, testified that he did not hear any exclamation or cry from the plaintiff but he did admit that the plaintiff reported to him that he had injured his back.
“The plaintiff was referred to the company-retained physician, Dr. Wade Sigmon, of Gonzales, Louisiana, for evaluation and treatment of his back complaint. His condition steadily deteriorated and Dr. Sigmon referred him to Dr. Richard B. Means who performed a myelogram which showed a herniation of the fourth lumbar disk on the left side. The disk was surgically removed by Dr. Means on August 7, 1969. Compensation was paid through November 7, 1969, when it was terminated by defendant although neither Dr. Means nor any other physician had at this time given any indication that the plaintiff was able to return to work.
“The rule is well established that the testimony of a plaintiff alone in a workmen’s compensation case is sufficient to establish the occurrence of an accident if there is nothing to discredit his account thereof and where there are corroborating circumstances. Defendant admits this rule of law but contends that plaintiff’s testimony has been discredited on several points. First it is pointed out that the plaintiff had given indication of his intention to leave his employment and return to his home in Eunice sometime prior to the accident. This is true but it does not necessarily follow that the plaintiff would fake a com-pensable accident. Secondly, the plaintiff denied any prior difficulty with his back and defendant produced a fellow employee, Mr. Gussie J. Ficklin, who testified that on one occasion when he complained to plaintiff that his back was ‘killing me’ following a hard day’s work the plaintiff replied, ‘me, too.’ This is so insignificant as to be unworthy of consideration. Finally the defendant faults the plaintiff for failing to call two fellow employees, Julian Cormier, and a Mr. Pollett, who were present in the area when the plaintiff allegedly suffered his accident. However, there was some indication that one of these witnesses was not readily available to testify, and in any event these witnesses were equally available, or more so, to the defendant, who likewise failed to call them. The Court is therefore of the opinion that no adverse inference should attach to either party ....
“All of the witnesses who testified including not only plaintiff’s fellow employees but also defendant’s supervisory personnel were unanimous in stating that the plaintiff was a hardworking and thoroughly satisfactory employee prior to the accident. The Court was impressed with the plaintiff’s testimony and with his manner on the stand and believes him to be telling the truth. In addition, his testimony is corroborated in part by the testimony of Robert Terrell; by the fact that he was a hard working, satisfactory employee prior to the accident; by the fact that Dr. Wade Sigmon found objective symptoms of injury sufficient to warrant his referral to a specialist, Dr. Means; and by the fact that the myelogram performed by Dr. Means did in fact reveal a herniation of the fourth lumbar disk on the left side. The Court finds therefore that the plaintiff suffered a disabling accident within the meaning of the workmen’s compensation act while employed by the de *57 fendant and in the course and scope of his employment on July 16, 1969.”
It goes without saying that in compensation cases, as in any other civil matter, the plaintiff bears the burden of proving his case by a reasonable preponderance of the evidence. Kirkham v. Consolidated Underwriters Ins. Co., La.App. 219 So.2d 827 (2nd Cir. 1969). Whether or not an accident did occur is, of course, a factual determination to be made by the trier of fact and, again, just as in all other civil matters, the conclusions of fact made by the trial judge, especially with regard to credibility of witnesses, will not be disturbed on appeal unless found to be manifestly erroneous. Murphy v. Piro, La.App. 240 So.2d 111 (4th Cir. 1970); Howard v. Pan American Fire & Casualty Company, La.App., 240 So.2d 755 (2nd Cir. 1970); Setliff v. Vaughn, La.App., 198 So.2d 178 (3rd Cir. 1967).
With respect to the extent of plaintiff’s disability the trial court concluded as follows :
“ . . . Dr. Means, the treating physician, testified that the plaintiff has a residual permanent disability of ten per cent of the body as a whole and concluded:
‘In my opinion this patient is physically capable of carrying out moderately strenuous work. If I were in a position to do pre-employment physicals I would advise the prospective employer that this man had a weak back, and most likely their personnel manager would not approve employment unless his skills were exceptional or unless their need for the man was great.’ (Deposition, pages 8-9).
“Dr. Robert Luke Bordelon, another orthopedist who examined the plaintiff estimated his residual disability at 10 to 15 per cent of the body as a whole which he thought would be permanent.
“Dr. Jerome W. Ambrister, a third orthopedist who examined the plaintiff, estimated his residual disability at fifteen per cent of the body as a whole which he thought would be permanent. With regard to the plaintiff’s chances of future employment, Dr. Ambrister testified as follows :
‘An individual who is hired to do arduous type of employment would automatically be rejected for employment as far as I am concerned on the basis of having had a previous laminectomy.’ (Deposition, pages 13-14).
“The medical evidence is unanimous to the effect (1) plaintiff has a residual permanent disability of 10 to 15 per cent of the body as a whole; (2) that while he is ‘physically capable of carrying out moderately strenuous work’ (Dr. Means) he should confine himself to less arduous tasks and should not attempt strenuous activity involving the lifting of heavy objects, etc.; (3) he will be more disposed to future injury than the ordinary individual; and (4) he will encounter difficulty in obtaining employment under normal circumstances.
“The legal question at issue is whether under these facts the plaintiff is permanently and totally disabled within the meaning of the workmen’s compensation act. The plaintiff was employed as a general maintenance employee and was expected and required to perform any activity and task which might arise at the plant. Some of the work is light, but a large part of maintenance work involves strenuous physical activity requiring the lifting of heavy objects and bending and stooping in difficult and cramped positions, activities which the plaintiff must now avoid. Defendant’s own superintendent readily admitted that he would not consider for employment any man who could not perform any and all activities and tasks which might arise in the plant, and specifically that he would not employ a man with the present plaintiff’s disability.
“The plaintiff has thus been cast into that category of employees commonly discussed under the ‘odd lot’ doctrine. Professor Larson, a recognized authority in *58 the field of workmen’s compensation, succinctly describes the doctrine as follows:
‘Under the odd lot doctrine, which is accepted in virtually every jurisdiction, total disability may be found in the case of workers, who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well known branch of the labor market. The essence of the test is the probable dependability with which claimant can sell his services in a competitive labor market .... Larson’s Workmen’s Compensation Law, Vol. 11, § 57.51, pp. 83-88.21.’
“The odd lot doctrine does not appear to have been clearly labeled and applied as such in Louisiana jurisprudence. However, the Louisiana Supreme Court apparently reached the same result in the recent case of Lawless v. Steel Erectors, Inc., 254 La. 37, 222 So.2d 849 (1969). There the plaintiff, an ironworker, suffered a compression fracture of the eleventh and twelfth dorsal vertebras which left him with a fifteen per cent permanent disability, or approximately the same as that involved in the instant case. After discussing the duties of an ironworker the Court stated:
‘In summary, some of the work is light and some is heavy, yet, a journeyman ironworker is expected to do each of the jobs included in his trade .... An injured worker seeking only light work will not obtain steady employment and, in time, he will, in all probability, be routinely rejected from all jobs because of the limitations inherent in a physical impairment restricting him to light work only . . . ’
“And further, the Supreme Court said:
‘His ability to compete in the open market with other ironworkers will thus be impaired. For obvious reasons the employer who has a choice will employ the ironworker capable of performing both heavy and light work in preference to one who is only able to do light work. Like the lawyer in Madison v. Prudential Insurance Company, 190 La. 103, 181 So. 871 (1938), an ironworker who is able to do only light work will soon find himself without light work to do.’
“And finally, the Supreme Court concluded :
‘Thus, as to heavy work, we find that plaintiff’s injury has brought total permanent disability for which he would clearly be entitled to compensation, if only heavy work were involved, and since heavy work is an integral part of an ironworker’s qualifications, plaintiff is, for all practical purposes, disabled from performing a substantial part of the duties of his trade.’
“Likewise, in the instant case, since heavy work is an integral part of a maintenance employee’s work, plaintiff is for all practical purposes disabled from performing a substantial part of the duties of his trade. Accordingly, in the language of Dr. Means, the plaintiff will not be able to obtain employment ‘unless his skills were exceptional or unless their need for the man was great’, or in the language of Dr. Am-bristor he ‘would automatically be rejected for employment as far as I am concerned on the basis of having had a previous laminectomy.’ Applying the rationale of the Lawless case, the plaintiff must be held to be totally disabled within the meaning of the compensation act.
“Turning now to the question of penalties and attorney fees, the Court was initially inclined to award these also based upon the termination of compensation on November 7, 1969, prior to his discharge by Dr. Means. Considering, however, that there was a good faith doubt on the part of defendant as to whether the plaintiff had been injured on the job, the Court has concluded that these should not be imposed against the defendant.”
*59 For the assigned reasons, the judgment of the trial court awarding plaintiff workmen’s compensation benefits for total and permanent disability is affirmed at appellant’s costs.
Affirmed.