TUCKER, Judge.
This is a workmen’s compensation case. The plaintiff, J. C. Driskill, brought the suit, seeking recovery of benefits for total and permanent disability, penalties and attorney fees. The trial court granted a judgment in favor of the plaintiff on the basis of permanent partial disability at the rate of $49.00 per week, during the period of disability, not to exceed 300 weeks, with penalties of 12% on the sums due from January 27, 1970 with legal interest and $2,500.00 as his attorney fees.
The plaintiff has appealed from this judgment, contending that he should have been awarded workmen’s compensation on the basis of total and permanent disability for a period not to exceed 500 weeks. The facts in the case are relatively undisputed. The plaintiff was initially injured on January 27, 1970, when he was working as a boilermaker for the Babcock & Wilcox Company at Baldwin, La. On that day he was working above ground, installing steel tubes on the top of a boiler, and during the course of this undertaking, pressure was applied, the tubing swung around, pulling the plaintiff across the boiler, and causing him to suffer injuries in the nature of a back strain. He did not complain at the time, and a few days later he was attempting to aid in lifting and moving a heavy angle or channel iron, with the result that he again strained his back.
He immediately went to the company physician, a Dr. Victor Feske, general practitioner, and he was advised he had pulled a muscle in his back, muscle relaxants were prescribed, and he was told he could return to work, but to refrain from doing any heavy lifting or straining. The plaintiff was put on light duty until March 1, 1970, when he left the job and returned to his home in Shreveport, La. There he consulted Dr. R. D. Hightower, a specialist in orthopedics, on March 7, 1970. He continued under Dr. Hightower’s observation and treatment until May 5, 1971. Dr. High-tower found that Mr. Driskill had experienced a lumbosacral sprain with resultant *696 muscle spasm and pain. This physician provided him with a corset-type back support for him to wear while he was working. On the occasion of each visit Dr. High-tower forwarded progress reports to the defendant, Travelers Insurance Company. Apparently the Travelers’ office in Lafayette, La. was initially handling the claim, but, when it developed that Driskill was averse to going to Lafayette to discuss his claim, the company manifested a willingness to send the reports to Shreveport. Evidently, the transmittal of the reports served no useful purpose. Suit was filed on October 15, 1970, and the record reflects that no workmen’s compensation had been paid to the plaintiff when the case was tried on October 15, 1971.
Dr. Hightower expressed the opinion, after Driskill’s last visit to him on May 5, 1971, that the plaintiff was suffering from a chronic lumbo-sacral strain and an old traumatic arthritis of Lumbar-4; this physician noted that the plaintiff had continued to work on the light duty aspects of his boilermaker job; that he was continuing to wear his back brace, and got along very well when standing; he had pain in his back when sitting and squatting, and the severity of his pain appeared to be specifically related to the degree of activity. Driskill was advised to be cautious about climbing and heavy lifting activities. Dr. Hightower ascribed a permanent partial disability of 10% to 15;% of the body as a whole, and found he would probably have some pain in performing any of his labor, the extent of which would depend upon the particular tasks. This expert opined, on the occasion of this last visit, that Driskill’s recovery had become static, suggesting that he did not expect the back condition to improve.
Dr. James L. Zum Brennen, specialist in orthopedics, who examined Driskill at the request of Travelers once on September 28, 1970 found that the plaintiff had suffered a myoligamentous strain of the lumbar area, although he could not rule out some degree of lumbar disc protrusion, or the quite common condition of some aggravation of a degenerative lumbar disc. Dr. Zum Bren-nen rated plaintiff’s physical impairment at 15% of his body, and that such impairment was functional in nature. He felt that Driskill could accomplish the lighter duty phases of boilermaker work better than he could the heavier tasks involving heavy lifting, stooping and bending. In another vein he stated that Driskill would experience pain in his back from time to time in varying degrees, regardless of what he would do, and that he could not predict when these onsets might occur. He was convinced Driskill could probably perform lighter duties more successfully than work which involved lifting and climbing and unusually vigorous activity.
The trial court, in determining that the provisions of R.S. 23:1221(3) with respect to permanent partial disability should be applied in assessing Driskill’s compensation claim, made note of the fact that the plaintiff had continued to work as a boilermaker in a restricted fashion following the accident; that, during the eighty-four week period between the accident date and the trial date, he had missed thirty weeks of work or approximately 35% of the time; that his income for a full 52 weeks of employment at the rate of $240.00 per week would produce an annual income of $12,-480.00* and a 35% loss of work time during a year amounts to a loss of wages due to the injury in the sum of $4,368.00 or a reduction in income of $84.00 per week. The trial judge then reasoned that the plaintiff was entitled to the maximum rate of weekly workmen’s compensation benefits, which he inadvertently stated to be $45.00 per week, for 300 weeks. In the judgment the trial judge properly fixed the maximum compensation rate at $49.00 per week in accord with Act No. 25 of the Extra Session of the Louisiana Legislature of 1968, which said act amended R.S. 23:1202. Penalties and attorney fees as above set forth were assessed. In his reasons for judgment the trial judge noted the testimony of A. E. *697 Vincent, Boilermakers Union business agent, aware of Driskill’s problems, that the union would try to assign old or disabled men to boilermaker jobs involving light work, but avoid sending them to jobs requiring hard work. Vincent stated that the plaintiff could do work as a rigger, a fitter, a welder, a borner, and a tray man. He could not perform work requiring chipping, high climbing, heavy rigging or any heavy work.
Admittedly, under the present jurisprudence the term partial disability set out in R.S. 23:1221(3) is infrequently applied. So long as total disability was defined literally as “a lack of ability to do work of any reasonable character” the terminology served as a useful and necessary classification, but when "total disability” was expanded to cover virtually all cases where the employee can no longer perform the same work as before the accident, the significance of partial disability subsided, and it was left almost without meaning. Especially is this the case where a skilled employee asserts a claim under workmen’s compensation. It should be pointed out that the few cases, in which the statutory provisions regarding partial disability have been applied, are against the weight of authority which considers such a worker as totally disabled. Generally speaking partial disability has been applied in marginal situations where an application of the currently accepted definition of total disability would bring about a manifestly unfair result. In several of the cases the worker was unskilled and the injury suffered was slight. The current trend is to hold as did the court in Haynes v. Silas Mason Co., 16 So.2d 137, 139 (La. App. 2d Cir. 1943) that “there is no such thing as a 65% carpenter or a 50% blacksmith.” In those instances where the physical injury has an appreciable effect on the worker’s capacity to discharge the operations performed by him prior to the accident, or where it results in substantial pain, the medical estimate of a percentage disability will be rejected, and compensation for total disability will be awarded. Especially is this true where the injury is not to an extremity, but is one which affects the motions of the entire body — as in the case of back injuries. See Malone — Workmen’s Compensation, Sec. 278, Chapter 13.
As held in the case of Lawless v. Steel Erectors, Inc., 254 La. 37, 222 So.2d 849 (1969), though an ironworker, after accidental injury, may be able to perform certain phases of his job, such as foreman, erecting metal sheeting and other work classified as light work, he would be unable to fill all the jobs that an ironworker is called upon to perform, and being prevented by his physical condition from doing heavy work, which is an integral part of an iron-worker’s qualifications, the plaintiff was totally disabled, because he could not perform a substantial part of the duties of his trade. His ability to compete in the open market with able-bodied ironworkers, capable of performing all the duties of the trade, would be curtailed and impaired. In accord with the Lawless case, supra, is Miller v. Morton International, Inc., 260 So.2d 55 (La.App. 1st Cir. 1972).
Applying the foregoing legal precepts to the facts of the instant case we find that evidence preponderates to the effect that the plaintiff is permanently and totally disabled within the intendment of the workmen’s compensation law and the jurisprudence. Actually, when plaintiff has worked since the accident, his wages have not decreased. He continues to receive pay, when employed, at the union scale. The problem presented is that he must confine himself to the easier and lighter tasks of a boilermaker, and he is no longer capable of competing in the labor market with a worker, who is fully able to perform all of the duties of the skilled boilermaker trade.
In recognition of the weight of authority asserted in the prior jurisprudence, we do not subscribe to the view of the trial court that the facts of this case particularly envision and justify the application of the *698 partial disability provisions of R.S. 23:1221 (3) in resolving the degree of plaintiff’s disability. While the authorities on occasion have allowed other factors to be considered in assessing the extent of a partial disability, the test applied in the subject statute on this score is “the difference between wages at the time of injury and wages which the injured employee is able to earn thereafter.” The evidence does not establish a reduction in the wage earnings of the plaintiff since the injury. Though he was unemployed some thirty weeks during the eighty-four weeks between the accident and the trial of the case, the record is not clear with reference to what proportions of these missed weeks of work could be ascribed to plaintiff’s physical inability to work at particular times, or to the lack of market need for boilermakers at given times, or for any of the various reasons which may have prevented him from working during the thirty weeks of missed work.
The defendant does not question the propriety of that portion of the trial court’s judgment imposing penalties and attorney fees against the defendant. Travelers argues the single proposition that the judgment of the lower court is correct insofar as it fixes plaintiff’s recovery on the basis of permanent partial disability.
We are confronted with the inescapable proposition that Driskill is unable to perform a substantial part of the duties of a boilermaker, and he is entitled to be awarded workmen’s compensation benefits on the basis of permanent and total disability.
The judgment of the trial court is amended to the extent that the award of workmen’s compensation to the plaintiff is increased from a period of three hundred (300) weeks to a period not to exceed five hundred (500) weeks; in all other respects the judgment is affirmed; the defendant shall pay the costs of this appeal.
Amended and affirmed.