272 So.2d 60 (1973)
Fred KNIGHTEN
v.
AM AMUSEMENT COMPANY.
No. 5260.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1973.
*61 Frank S. Bruno and Carl J. Ciaccio, New Orleans, for plaintiff-appellant.
Montgomery, Barnett, Brown & Read, Daniel Lund, New Orleans, for defendant-appellee.
Before SAMUEL, CHASEZ and BOUTALL, JJ.
SAMUEL, Judge.
Plaintiff filed this suit against his employer for total and permanent disability benefits under the Louisiana Workmen's Compensation law. He alleges he sustained a hernia in the course and scope of his employment and acute prostatitis and cystitis which developed as a result of the hernia repair. Following trial on the merits, judgment was rendered in favor of the defendant, dismissing plaintiff's suit at his cost. Plaintiff has appealed.
The hernia developed following a work connected accident on May 13, 1969. Plaintiff underwent the hernia repair on July 19, 1969 and workmen's compensation was paid until September 2, 1969, following his discharge by treating physicians as able to return to work. All of the medical experts agree that plaintiff is presently suffering from acute prostatitis and cystitis.
Plaintiff's claim is based primarily on those ailments and a question presented is whether or not the accident and/or operation aggravated a preexisting prostatitis and cystitis or caused that condition. The trial court found plaintiff had failed to sustain his burden of proving either that there was any causal connection between his present condition and the accident and/or operation or that his previous condition was aggravated thereby. Pertinent testimony was given by plaintiff himself (it was stipulated his wife would testify likewise), the defendant's manager, and four medical experts.
Plaintiff testified he was injured while loading a 500 pound pool table on a truck on May 13, 1969. The company sent him to Dr. Richard A. Faust who operated on July 8, 1969. He remained in the hospital five or six days. Four weeks later he was unable to urinate and Dr. Faust sent him to a urologist (Dr. Robert Prosser Morrow, Jr.) who treated him for that condition. *62 He returned to work six or seven weeks after the operation. He is still under medical care because he has to urinate frequently. Although during his testimony he stated he did not have problems of urinary frequency prior to the operation, he later admitted that on September 27, 1967 he had a prior hernia repair and suffered the similar postoperative urinary problems. Since the accident he was seen by Dr. Louis Ensenat, who told him he was unable to work. Defendant paid him compensation until September, 1969 when Dr. Morrow said he could return to work.
The defendant company's manager testified plaintiff returned to work in September, 1969 and left his employment October 3, 1969. He "just left" on the October date without complaining of any inability to perform the same work he was doing at the time of the accident.
The four medical experts who testified were: Dr. Richard A. Faust, a general surgeon and the operating and treating physician, Dr. Ronald W. Martz, an expert in internal medicine, and Dr. Robert Prosser Morrow, Jr., a specialist in the field of urology, who testified on behalf of defendant, and Dr. Louis Ensenat, a general surgeon, who testified on behalf of plaintiff.
Dr. Faust first saw plaintiff May 20, 1969 relative to his injury on the 13th. Examination disclosed a left inguinal hernia. The doctor was of the opinion plaintiff was born with the hernia but the straining maneuver resulting from supporting the weight of a 500 pound pool table caused its appearance. Plaintiff was sent to Dr. Martz for a preoperative examination which indicated he was in satisfactory condition to tolerate surgery. He gave no history of any preexisting urinary or prostrate problems, although he disclosed he had prior hernia surgery. A urinalysis was normal and negative. The operation was performed on July 9, 1969. Following the operation plaintiff had no significant genital urinary problems. Catheterization was not necessary and plaintiff passed urine normally with no complaints preoperatively or postoperatively for several weeks thereafter.
Plaintiff first complained of soreness in both testicles on August 6, 1969. Examination was negative. He was advised to soak in hot water. On August 16, plaintiff complained of urinary problems. A urinalysis was ordered and he was referred to the urologist. On August 26, Dr. Faust examined plaintiff, found the repair was solid, and advised him he could return to work. He was discharged following a final examination on September 2.
Dr. Faust was of the opinion plaintiff's urinary problem and prostatitis were unrelated to the accident or surgery because they did not occur sooner than five weeks after the accident and because of an absence of catheterization during hospitalization. He was of the further opinion that neither the hernia repair nor the chronic prostatitis would disable plaintiff from performing as a laborer and that he could return to the same work he had previously performed. He felt the surgery had been completely successful, had strengthened the groin area and that there was only a 1% chance of a recurrence of the hernia. He reviewed plaintiff's records at Charity Hospital and found them replete with urinary problems prior to the operation. Plaintiff had been seen in the urology clinic frequently and as far back as 1942.
Dr. Ronald Martz performed a preoperative examination of plaintiff to determine his fitness for surgery and his testimony was concerned only with that examination. He took a medical history, performed a physical examination and had laboratory tests made consisting of an electrocardiogram, chest x-ray and urinalysis. Plaintiff had no complaints of urinary disease, infection or problems nor did he disclose any history of prostatitis. Dr. Martz certified him as fit for surgery.
Dr. Robert Prosser Morrow, Jr., the urologist, saw plaintiff August 20, 1969 on referral from Dr. Faust. The chief complaint *63 was urinary frequency and dysuria (painful urination). Plaintiff told Dr. Morrow he had no urinary trouble before his present illness. The doctor took a history and performed a rectal examination, extracting secretion from the gland and examining it under a microscope, which he stated is the only way to test for prostatitis. He found plaintiff had acute prostatitis and acute lower urinary tract infection. Plaintiff was treated until October, 1969, when the urine and prostate had cleared up. The doctor was of the firm opinion these troubles were not connected with the hernia repair. He testified there probably has never been a case of prostatitis caused by hernia repair without catheterization or instrumentation; there is no physical connection between the area of the prostate gland and the area of the incision to repair the hernia. The doctor felt the fact that plaintiff's symptoms did not begin until five weeks after the operation was additional evidence of the absence of any such causal connection. The doctor was also of the opinion a hernia repair would not, and in this case did not, aggravate a preexisting condition.
Dr. Louis A. Ensenat, who testified for plaintiff, first took his history and examined him on August 21, 1970. In his opinion plaintiff suffered from chronic prostatitis resulting from improper preparation for the herniorrhaphy of July 9, 1969, with complications thereafter resulting from delayed referral to a urologist and a too early return to work. He stated plaintiff was unable to perform heavy manual labor due to the two hernia operations and to the recurrence of acute prostatitis.
The doctor saw plaintiff on two other occasions, two or three weeks after his initial examination, and thereafter on November 29, 1970, the day before the trial, a total of four times. He did not perform a rectal examination because he considered it unnecessary, nor did he have a urinalysis made. He was of the opinion the urinalysis performed prior to the operation should have alerted defendant's doctor that further work was needed as there were indications of a chronic kidney infection.
In this court plaintiff contends the trial court erred in: (1) failing to allow an amendment to the pleadings; (2) not resorting to lay testimony when there was a conflict in the medical testimony; and (3) refusing to hold that plaintiff is permanently disabled either as a result of the accident and/or operation, or as a result of aggravation of his condition by the accident and/or operation.
Relative to the first contention, plaintiff's original petition did not plead aggravation of a preexisting condition and the trial court did refuse to allow such amendment offered for the first time during the trial while the defense was presenting its case. However, testimony at the trial adequately covered that possibility and in arriving at his conclusion, as do we, the trial judge did consider such testimony as indicated in his reasons for judgment. Thus, even assuming but not deciding, the amendment should have been allowed, plaintiff has not been damaged by its refusal.
Nor do we find any merit in plaintiff's second contention relative to lay testimony. The only lay witnesses who testified about plaintiff's physical condition were the defendant manager, plaintiff himself and, by stipulation, the latter's wife. The trial court did have the advantage of this testimony. We are satisfied he gave it due consideration, as do we, in arriving at a conclusion.
Relative to plaintiff's third contention, the trial court had the benefit of testimony from the three lay witnesses and the four medical experts. The treating physician and a treating specialist in the field of urology, the specific specialty with which we are here concerned, both agree plaintiff's present condition is not due to his accident, his operation, or to any aggravation by the accident or operation of his preexisting condition. They are further of the *64 opinion he can return to the work he was doing prior to the accident.
The only adverse medical testimony is that of Dr. Ensenat who did not examine plaintiff until more than a year after the surgery and who never treated him. Dr. Ensenat's opinion is based upon a urinalysis performed prior to the accident. The other doctors indicated the results of that urinalysis were within normal limits. Dr. Ensenat was of the further opinion that plaintiff's postoperative condition was aggravated by delay of referral of the patient to a urologist. However, as has been said, Dr. Faust testified plaintiff was referred to a urologist the day he made the complaint relative to those problems, and Dr. Faust, Dr. Martz and Dr. Morrow testified plaintiff never gave a history of prior urinary problems.
The established rule is that in compensation cases, as in other cases, plaintiff bears the burden of proving his claim with legal certainty by a preponderance of the competent evidence. Hebert v. Your Food Processing & Warehouse, Inc., 248 La. 197, 177 So.2d 286; Dobard v. R. Theriot Liquor Stores Inc., La.App., 195 So.2d 350. It is also generally true that the testimony of a specialist as to matters which fall within his field of specialization is entitled to greater weight than that of another practitioner who is not a specialist in that field. Blue v. Kinney Company, La.App., 256 So.2d 145; Davis v. Lesnack, La.App., 205 So.2d 77; Prier v. Massman Construction Company, La. App., 205 So.2d 109; Manning v. Herrin Transportation Company, La.App., 201 So. 2d 314. It is further generally true that the testimony of a physician who examines and treats the injured party is entitled to greater weight than that of a physician who only examines the party at a later date. Lotz v. Jamerson Hardware Store, La. App., 211 So.2d 391; Vidrine v. United States Fidelity & Guaranty Co., La.App., 205 So.2d 178; Treadway v. State Farm Insurance Company, La.App., 204 So.2d 609; Meche v. Maryland Casualty Company, La.App., 204 So.2d 719.
Here the testimony of the treating physician and the testimony of the specialist are not in conflict and were accepted by the trial judge. We cannot say he committed error in accepting their testimony and rejecting that of Dr. Ensenat. Accordingly, we find no error in his conclusion that plaintiff has failed to sustain his burden of proof.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.