BEER, Judge.
Plaintiff-appellee, Hollis A. Magee, is an iron worker who sustained an on-the-job crushing injury to his right thumb on or about July 7, 1974. Defendant-appellant, Commercial Union Insurance Company, the workmen’s compensation insurer of his employer, Engineered Equipment Co., Inc., paid weekly benefits at the rate of $60.00 for 49 weeks (from July 7, 1974 to June 15, 1975) and medical expenses of $983.15. Thereafter, Magee instituted thi’s suit, seeking a judgment of total and permanent disability. The trial court awarded weekly payments for permanent and total disability, subject to a credit for prior payments, and Commercial Union Insurance Company appeals.
Magee is a 39-year-old iron worker injured while performing his duties in connection with the erection of a one-story building. Immediately following the accident, he was treated at West Jefferson Hospital by an unidentified physician. Two to three weeks after the accident, he consulted Dr. Courtney Russo, seeking relief of pain in his right thumb and restoration of its flexibility. He was later examined (but not treated) by Dr. Daniel Riordan in December, 1974, and Dr. Riordan’s reports of that examination and a follow-up examination in June, 1975, form an important part of the record before us. (The reports were introduced into evidence pursuant to a joint stipulation of counsel.)
At the trial, Magee testified that he continues to experience some pain and that, more importantly, he has little or no flexibility of movement in his thumb. He contends that much of his work “is in the air” which necessitates climbing and the ability, while aloft, to use tools weighing up to 12 pounds each. He professes inability to satisfactorily perform his duties because of his incapacities. He views his return to iron work as hazardous to himself and co-employees because the lack of gripping power in his right hand effectively prevents his full use of it to handle tools or hold on to a structural support while performing his duties. Since the nature of his job often necessitates the use of one hand to support himself and the other to grip a tool^ his alleged incapacity forecloses safe and effective job performance. For these reasons, he has not returned to his previous occupation.
Magee testified that he now drives a one ton truck with an average workday of 10 to *942 12 hours. He acknowledges that Dr. Rior-dan recommended surgical intervention for removal of a 'bone chip in his thumb tip that causes him some pain, but he refuses to authorize the operation since both Drs. Russo and Riordan indicate (according to him) that such procedure would not alleviate the flexibility problem. He also refuses to authorize a bone graft operation which could possibly restore some of the flexibility to his distal joint.
John R. Wellman, a former journeyman iron worker, who qualified as an expert in the field, generally corroborated Magee’s testimony as to the nature of his work. He admits that there are some ground jobs for iron workers but observed that 75% to 80% of the work available to iron workers involves climbing and working at various heights above the ground.
D. J. Rosa, a fellow iron worker and Financial-Security Treasurer of Iron Workers Local 58, testified he is in charge of dispatching iron workers to their jobs. He can’t say whether plaintiff can presently do his job, but observed that an added burden is imposed on the contractor if the union sends a worker who is not fully capable of doing his work at ground level as well as aloft.
Dr. Courtney Russo’s testimony is generally corroborative of Magee’s contentions. He states: “The man never has been able to really flex the tendon at all really. He never has had adequate function of the distal phalanges.” This bears directly upon Magee’s ability to grip with his right hand. The thumb, according to Dr. Russo, acts more or less as a stabilizer as compared with the actual gripping function provided by the fingers. Its function is, nonetheless, vital to one’s gripping ability. Because of his disability, Magee has insufficient stabilizing control over “recoil” which effectively inhibits his ability to use the tools of his trade while keeping himself safely aloft. In short, he does not have adequate control over his ability to grip with his right hand. Thus, while Dr. Russo is not familiar with Magee’s actual job description, he is, nevertheless, of the view that his condition impairs Magee’s work capabilities by causing him to run a greater risk of losing his balance if he should rely on his right hand for stability. Based on his examinations, Dr. Russo projected a 30% permanent disability of the hand.
With regard to the bone chip in the tip of Magee’s thumb, Dr. Russo observed that the problem has pretty much corrected itself. The chip has united with the main bone. Although this somewhat contradicts Dr. Riordan’s suggestion to remove same, both agree that removal of the bone chip would not alleviate the distal phalanx flexibility problem previously discussed.
Dr. Russo was of the view that the only alternatives to the distal joint inflexibility are: maintenance of the status quo or a free tendon graft. Dr. Russo believes that such an operation would have about a 50-50 chance of restoring motion in the joint. But, even if the operation was successful, a 50% function return was about the best that could be expected. He described the operation as intricate and difficult, but not dangerous. Magee declined the operation.
Dr. Riordan has not treated Magee. His examination, in December of 1974, disclosed a fracture of the tuft of the distal phalanx which had not united and resulted in a prognosis that Magee would not regain full motion because of the crushing type injury. The follow-up examination, in June of 1975, does not indicate any change in this basic finding with respect to loss of function. Dr. Riordan estimated permanent partial loss of function of the right hand at 10%.
An iron worker is a skilled employee. If he is injured during the course and scope of his employment so that he becomes unable to perform substantially all of his duties without endangering himself or his co-workers, he is totally and permanently disabled under the Workmen’s Compensation law. Mercer v. Coal Operators Casualty Co., 212 So.2d 431 (La.App. 2nd Cir., 1968). In Lawless v. Steel Erectors, Inc., 254 La. 37, 222 So.2d 849 (1969), an iron worker sought total and permanent benefits for an injury diagnosed as a mild com *943 pression fracture of the 11th and 12th dorsal vertebraes. He suffered back pain on performance of his usual duties. In granting total and permanent awards, the Supreme Court cited Mercer with approval and observed:
“Although he may be able to do a foreman’s job or erect metal sheeting and other work classified as light work, he will be unable to fill all the jobs an iron worker is called upon to fill and, as a result, in time, his steady employment will be seriously affected . . . His ability to compete in the open market with other iron workers will thus be impaired. For obvious reasons the employer who has a choice will employ the iron worker capable of performing both heavy and light work in preference to one who is only able to do light work.”
We believe that Magee’s description of his. present condition, generally confirmed by Dr. Russo and Dr. Riordan, supports the trial court’s award, particularly in view of the manifest error rule announced in Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Magee’s refusal to undergo the bone graft surgery is not, we believe, unreasonable. The operation cannot, apparently, be considered one which will clearly result in Magee being able to resume the type of work he was performing prior to the accident. Moreover, “this judicially-created defense . . . must be afforded restrictively rather than liberally, for it is in derogation of the employee’s legislatively created right to receive compensation during work-caused disability.” Bass v. Service Pipe Trucking Co., Inc., 289 So.2d 78 (La.1974). While there is, apparently, little danger involved in this operation, Dr. Russo’s testimony indicates the most optimistic probable result would be 50% increase in function. This factor must be considered conjointly with the probability of any success being estimated as a 50-50 proposition. Furthermore, there is no evidence in the record to indicate that a successful operation which restored only 50% of the flexibility would satisfactorily overcome his disability so as to permit Magee to resume his iron worker’s duties in safety.
We are able to understand and, to some degree, sympathize with the reactions of defendant-appellant. An award of permanent and total disability on these generally uncontested facts may seem somewhat harsh. However, the record indicates just enough clearly proven disability and just enough equivocation with respect to the probable outcome of the elective surgery to signal disability within the broad spectrum of the Act’s application[1] when considered in light of the more or less intricate duties of an iron worker. Very recently, our brother, Judge St. Amant, sitting with us by assignment, wrote Duray v. Continental Insurance Company, 332 So.2d 312 (Court of Appeal, Fourth Circuit, 1976). The facts are somewhat different, but the general application of the provisions of the Act is essentially the same. For this reason, we make particular reference thereto.
Though not unmindful of the closeness of the call that must be made in this case, we find no compelling basis for upsetting the conclusions reached by the able trial judge and, accordingly, affirm. Costs of this appeal must be borne by defendant-appellant.
AFFIRMED.

. Though now disabling within the Act’s application, the moderate nature and extent of Ma-gee’s injury and the financial lure of the iron worker’s trade, may, at some point in the future, combine to become a catalyst for Magee’s return to his former occupation. Certainly, it is possible that the compensating tendencies of our bodily functions are such that, with the passage of time, Magee’s ability and confidence will be regenerated to the extent that he can perform his former occupation with skill and safety. Should such, hopefully, come to pass, these proceedings can, of course, be reopened.