371 So.2d 378 (1979)
Irvin DUFRENE
v.
ST. CHARLES PARISH POLICE JURY.
No. 10130.
Court of Appeal of Louisiana, Fourth Circuit.
May 4, 1979.
*379 Garland R. Rolling, Metairie, for Irvin Dufrene, plaintiff-appellee.
James L. Donovan, Donovan & Lawler, Metairie, for St. Charles Parish Police Jury, defendant-appellant.
Before SAMUEL, STOULIG and BOUTALL, JJ.
BOUTALL, Judge.
Defendant, St. Charles Parish Police Jury appeals from a judgment awarding Irvin Dufrene permanent total disability workmen's compensation benefits, but denying plaintiff's prayer for penalties and attorney's fees. Plaintiff has answered the appeal seeking those penalties and attorney's fees. In this court, the defendant makes one basic contention, that the trial court erred in awarding total permanent disability as opposed to permanent partial disability.
The only evidence adduced consists of the testimony of plaintiff himself and the medical reports of Dr. Walter Brent, Jr., an orthopedic surgeon, stipulated in evidence. The trial court found plaintiff's disability was due to his inability to work without pain and the fact that he had only one skill, heavy equipment operator, which he was unable to perform due to the injury sustained.
Plaintiff was employed by the defendant as a heavy equipment operator. His job consisted mostly of operating draglines and bulldozers, including working with heavy tools such as sledge hammers. On April 27, 1976 he was operating a dragline and while so employed, he was injured when a lever on the dragline became unlocked and struck plaintiff on his left wrist (he is right-handed.) He was paid compensation totaling $1,020 and returned to light duty thereafter on the advice of his doctor. The trial judge gave detailed findings of fact in his consideration of the events following the injury, and we quote them here.
"* * * From the testimony of plaintiff and the medical reports of Dr. Brent it appears that plaintiff injured his left wrist on April 27, 1976: That after treatment by Dr. Vial for a few weeks he was advised to try returning to work.
"He did so but the wrist swelled and was painful and he could not perform his duties. He returned to the doctors and was referred to Dr. Brent.
"On June 2, 1976, Dr. Brent found the plaintiff to be suffering tenosynovitis of the left wrist with attendant swelling and complaints of pain. He injected the wrist and advised plaintiff to continue with light types of activity.
"Plaintiff's wrist continued to swell and pain him when he attempted to work and on August 4, 1976, Dr. Brent reported that the left wrist had developed tenosynovitis with a ganglion at the anterior lateral aspect of the wrist area. Since medication and injections had not improved the wrist Dr. Brent advised that he had made arrangements for surgical repair to the wrist.
"On September 22, 1976, Dr. Brent reported that a mass had been removed from the anterior aspect of the wrist but that a ganglion of the wrist was present. On that day Dr. Brent removed the splint and sutures. He instructed plaintiff to start gradual activities but said he could not perform any type of heavy work.
"On October 27, 1976, Dr. Brent found plaintiff to have increased his activities; that the swelling had decreased; but that plaintiff had a 15% loss of function of the wrist. Dr. Brent felt this would improve with activities and suggested that plaintiff should be able to return to his former occupation by October 29, 1976.

*380 "On November 10, 1976, Dr. Brent reported that plaintiff had returned to work with a minimal amount of discomfort, but with 5% limitation of wrist motion, thickening of the anterior wrist and some swelling. He discharged plaintiff as of that date with a permanent disability of the left upper extremity of 5%.
"However, on April 20, 1977, Dr. Brent reported that plaintiff complained of pain and swelling of the wrist when he does heavy work. Plaintiff had been away from work for a month when Dr. Brent examined him, nonetheless he found mild tenderness of the wrist. Dr. Brent attributed the residual injury to the wrist and was of the opinion that plaintiff might have to discontinue his heavy type occupations.
"On May 4, 1977, Dr. Brent reported that plaintiff had swelling and pain when required to perform heavy duty but could perform light activities with only tenderness of the wrist being apparent.
"On May 26, 1977, Dr. Brent again rated the permanent disability of the left wrist to 15%. It was his opinion that plaintiff could do his former work with limitations.
"On June 29, 1977, Dr. Brent discharged plaintiff with a 15% disability of the wrist and with a prognosis as follows: I feel that he can be discharged on this date with the understanding that he will continue to have discomfort with heavy type of work.'
"Plaintiff has only one skill: He is a heavy equipment operator. Operating heavy equipment also requires handling, lifting, and repairing heavy materials in addition to the heavy physical activities involved in the operation of the equipment.
"The evidence does not show that there is an occupation or related work activity that plaintiff can gainfully fulfill and occupy. The law relative to working in pain is so well established that comment is unwarranted."
Our settled law is that a plaintiff in a compensation case must establish his claim to a legal certainty and by a reasonable preponderance of the evidence.[1] Also pertinent here is the rule that an injured workman is not required to work with substantial pain.[2] Whether the compensation claimant is unable to work without pain sufficiently severe to be considered disabling is a question of fact.[3]
Although the evidence is somewhat sparse, the plaintiff testified that his wrist was swollen and gave him considerable problems, that it was painful and at times painful enough that he could hardly work at all. It is evident that, supported by the medical reports, his testimony was given great weight by the trial judge, and the judge found that he cannot perform the work demanded of him as a heavy equipment operator.
We agree with this conclusion, but we do not agree that the evidence is sufficient to support a finding of permanent total disability as defined in R.S. 23:1221(2), as amended by Act 583 of 1975, effective September 1, 1975 and applicable to this 1976 accident.
Prior to this amendment it would appear that the judgment could be maintained under the principles set out in the case of Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976) as stated p. 987:
"An injured employee is deemed totally and permanently disabled `whenever he is unable to perform work of the same or *381 similar description to that which he performed before the accident.'
* * * * * *
"A judgment for total permanent disability should be awarded when the claimant is shown to be totally disabled at the time of trial and the duration of such disability is indefinite or the evidence does not clearly indicate its duration."
* * * * * *
However the 1975 amendment has statutorily changed the definition of permanent total disability and partial disability to the following:
"§ 1221. Temporary, permanent, or partial disability; schedule of payments.
* * * * * *
"(2) For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability.
"(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, during the period of disability, but not beyond a maximum of four hundred weeks for such partial disability resulting from injury occurring on and after September 1, 1975, and on or before August 31, 1976; * * *".
In applying the evidence to this law we note that Dufrene testified his wrist gave him problems and that it was "at time painful enough to where I could not hardly work at all." The doctor's reports show a consistent opinion that only heavy work (lifting or pulling) associated with his employment causes him problems, and "that he will continue to have discomfort with heavy type of work. I am giving him a fifteen percent partial perma (sic) disability of the left upper extremity". There is no other than Dufrene's testimony and the doctor's reports.
This evidence is sufficient to support a judgment of partial disability of the employee under Subsection (3) in that he could not perform the duties in which he was customarily engaged when injured or similar duties for which he was fitted by education, training and experience, but does not support a judgment under Subsection (2) of permanent total disability to engage in any gainful occupation. See Lachney v. Cabot Corporation, et al., 368 So.2d 500 (La.App. 3rd Cir. 1979). We would agree that the employee is not called upon to negate his future employment in each of the many occupations which might be available, but he must show that he reasonably could not do work of a reasonable character available to him. The above quoted evidence shows only that Dufrene cannot engage in heavy work that involves lifting or pulling with his left arm. It does not negate his ability to do lighter work of the same character, for example, lighter machines or vehicles, or work not involving heavy lifting or pulling with his left hand. See for comparison Kilbourne v. Armstrong, 351 So.2d 802 (La. App. 1st Cir. 1977), and Ashworth v. Elton Pickering, Inc., 361 So.2d 940 (La.App. 3rd Cir. 1978).
Accordingly, we hold that a judgment of permanent total disability is erroneous under *382 the facts of this case, and that the employee has a partial disability as defined in Subs. (3). He is entitled to 66 2/3% of the difference between the wages he was earning at the time of the injury and any lesser wages which he actually earns in any week thereafter during the period of disability, but not beyond a maximum of 400 weeks, subject to the limitation on amounts stated in R.S. 23:1202(1).
Dufrene was employed at an hourly rate of $4.50 for 8 hours per day, 5 days per week, or $180 per week, and so qualifies for the maximum amount of $85.00 per week. He was paid $1020 in compensation, or 12 weeks. The record does not inform us of any employment up to trial except that Dufrene says he worked for several months after the injury but then could not return to work. It is reasonable to conclude that during this period Dufrene was temporarily totally disabled beyond the 12 weeks of compensation paid him. Rather than remand for a more precise determination of benefits due during this period, we conclude that Dufrene is entitled to $85 per week from date of injury to date of trial, subject to a credit of 12 weeks compensation paid.
The last issue to resolve is appellee's claim for penalties and attorney's fees. The evidence states that compensation was stopped in November of 1976, and we have delineated above the consecutive reports of the treating physician as considered by the trial judge in order to indicate the basis for our decision here. By reference to those documents we note that the letter of October 27, 1976 gave a probable return to work date but also advised of a 15% disability. The letter of discharge of November 10, 1976 may have suggested no further need of medical attention, but it reported a 5% disability, yet beyond that date the plaintiff still continued to suffer and the subsequent reports show an increase of disability to 15% and the fact that plaintiff was still continuing to have problems. While there may have been some justification for termination of compensation payments in reliance upon the physician's reports in November, when an insurer receives medical information indisputably showing disability at a subsequent date the insurer may not blindly rely upon the early report and solely on its basis avoid penalties for arbitrary non-payment of compensation benefits indisputably due a disabled workman. Walker v. Gaines P. Wilson & Son, Inc., supra. That case further affirmed the holding in Fruge v. Pacific Employers Insurance Company, 226 La. 530, 76 So.2d 719 (1954) to the effect that even if the doctor's undisputed report showed only partial disability at the time following initial discharge, an insurer may avoid penalties upon the ultimate award for total disability only if it unconditionally tenders benefit for the partial disability shown. See also Guillory v. Travelers Insurance Company, 294 So. 215 (La. 1974). We hold that plaintiff is entitled to the statutory penalties against the employer provided by R.S. 23:1201.2. Because compensation payments of $1,020 have been paid, the plaintiff is entitled to 12% of the difference between the amount paid and the amount past due, and all reasonable attorney's fees for the prosecution and collection of such an amount. Kilbourne v. Armstrong, supra. We determine that reasonable attorney's fees in this case should be fixed at the sum of $1,000.
Accordingly, we amend and recast the judgment appealed and we render judgment herein in favor of plaintiff, Irvin Dufrene, and against defendant, St. Charles Parish Police Jury, decreeing Irvin Dufrene to have partial disability as defined in R.S. 23:1221(3) and to be entitled to 66 2/3% of the difference between the wages he was earning at the time of the injury and any lesser wages he actually earns thereafter, limited to a maximum of $85 per week, during the period of his disability but not beyond a maximum of 400 weeks, subject to a credit for 12 weeks compensation paid, and further awarding statutory penalties of 12% on all amounts past due and attorney's fees of $1,000.
All costs in both courts shall be borne by appellant.
AMENDED AND RECAST.
SAMUEL, J., concurs.
*383 SAMUEL, Judge, concurring.
I entertain considerable doubt that the plaintiff in this case has established with the required certainty that he cannot work without substantial pain. This doubt is based on the fact that only the plaintiff gave testimony relative to pain and the treating physician's reports indicate discomfort rather than pain. However, I cannot say that the majority's conclusion is incorrect.
Accordingly, I respectfully concur.
NOTES
[1] Hebert v. Your Food Processing & Warehouse, Inc., 248 La. 197, 177 So.2d 286; Knighten v. Am. Amusement Company, La.App., 272 So.2d 60; Price v. Walgreen's Company, La. App., 204 So.2d 67; Flowers v. E. M. Toussel Oil Co., La.App., 190 So.2d 147; Williams v. New Orleans Paper Box Company, La.App., 185 So.2d 109.
[2] Lawless v. Steel Erectors, Inc., 254 La. 37, 222 So.2d 849; Brannon v. Zurich General Accident & Liability Ins. Co., La.App., 59 So.2d 836; Flowers v. E. M. Toussel Oil Co., supra, note 1.
[3] Ball v. American Marine Corporation, 245 La. 515, 159 So.2d 138; Flowers v. E. M. Toussel Oil Co., supra, note 1.