286 So.2d 499 (1973)
Charles ARTHUR, Plaintiff-Appellant,
v.
D. B. McCONNELL, Defendant-Appellee.
No. 12177.
Court of Appeal of Louisiana, Second Circuit.
November 13, 1973.
*500 Hal V. Lyons and Glen H. Smith, by Glen H. Smith, Shreveport, for plaintiff-appellant.
William B. Lynch, Bossier City, for defendant-appellee.
Before BOLIN, HALL and WILLIAMS, JJ.
*501 BOLIN, Judge.
Plaintiff instituted this action against defendant claiming workmen's compensation benefits for total and permanent disability, penalties and attorney's fees. From judgment rejecting plaintiff's demands he appeals.
For reasons hereinafter expressed, we reverse the judgment of the lower court and render judgment in favor of plaintiff against defendant.
Defendant was engaged in the business of reworking oil wells. Plaintiff's duties were classified as those of a common laborer, necessitating hard work but little skill. On May 5, 1972, while employed by defendant, plaintiff was "pulling some tubing" from a well. Defendant testified that several barrels of oil had been spilled from the tubing and was on the decking of the rig. While aiding in the pulling operation plaintiff slipped on the oily surface and fell to the deck of the rig. He immediately complained to defendant, who instructed him to stop working for a while, rest and take some aspirin. Plaintiff completed the day's work but testified he did so under pain.
The accident happened on Friday and, being unable to report to work on Monday, plaintiff called defendant's office and the secretary took him to a chiropractor in Shreveport for observation and treatment. The chiropractor made an X-ray and fitted defendant with an elastic rib belt. Plaintiff visited the chiropractor on two other occasions and the bill for these services was sent to and paid by defendant.
Defendant began paying weekly compensation benefits to plaintiff on May 24, 1972. For the purpose of determining these benefits defendant added the total amount of wages received by defendant since his initial employment, divided this figure by the number of weeks plaintiff had been employed, and took 65% of this figure to arrive at weekly benefits of $34.87. He continued making weekly compensation payments for eleven weeks, with the last payment being made on August 4, 1972.
Defendant testified he stopped paying compensation because he had heard plaintiff was working for a construction firm and also because "he never asked for any more." However, later in his testimony defendant was asked, "After you ceased paying him the compensation in August, did Charles Arthur ever contact you again about compensation payments?" To this question he replied: "He contacted me a couple of months later. At that time it was discussed that he had gone to the doctor and I asked him why he hadn'tto give me the name of the doctor. I don't think he gave me Dr. King, I think he gave me another name. I think a specialist."
The record reflects that at or about the time defendant ceased paying plaintiff compensation benefits plaintiff went to work for a construction company performing common labor. After about six weeks with this company he either quit or was discharged because he was unable to carry out his duties. The only other work he did consisted of pouring concrete for about one-half day.
The only medical evidence in the record consists of two letters from Dr. Ray E. King, orthopedic surgeon from Shreveport, addressed to one of plaintiff's attorneys. By stipulation these letters were introduced into evidence in lieu of the testimony of Dr. King. The first letter, dated May 16, 1972, reflects plaintiff was examined on that date by Dr. King, who stated that X-rays of the thoracic spine revealed no definite fractures; that X-rays of the right rib cage reflected a fracture and displacement of at least one rib. Dr. King concluded plaintiff had received a fractured rib on the right side and had sprains and contusions to the "right thoracic region, posteriorly." Dr. King recommended plaintiff continue to wear the rib belt, continue conservative treatment and take pain pills which he prescribed.
*502 The second report of Dr. King, dated March 8, 1973, resulted from a visit to his office by plaintiff on March 6, 1973, at which time the patient stated he had attempted to do some construction work but was unable to continue because of a stiff and painful back. Upon examination the doctor found the lumbar spine was moderately stiff and that the patient experienced pain in that area. He concluded plaintiff appeared to have restricted motion in the lower back and to experience pain on movement or palpitation of the lumbar muscles. He classified the patient as having a "chronic myoligamentous sprain in the lumbosacral region". He again prescribed pain killers and suggested that plaintiff continue to take this medication. For these two examinations Dr. King rendered a bill for $125.
The record does not reflect that either report of Dr. King was sent to defendant. However, on January 18, 1973, plaintiff's attorney sent defendant's attorney a copy of the first medical report.
There was considerable lay testimony relative to whether plaintiff suffered pain after his initial injury. Testifying for plaintiff was a fellow employee when plaintiff was employed with the construction firm, who testified plaintiff had to take aspirin almost constantly while he was working for the construction company and that most of the hard labor was done by the witness rather than by plaintiff.
Other lay witnesses, including people who observed him frequently, as well as those who lived in the same house with him following the accident, testified plaintiff was never the same after the accident, was in almost constant pain and required medication, including rubbing linament at night.
Lay witnesses for defendant included one of plaintiff's previous fellow employees and the general contractor who did business as K & K Construction Company. These witnesses testified they had not noticed plaintiff's inability to work while he was employed with that company. Defendant offered no medical testimony as to plaintiff's condition, nor did he request the court for permission to have him examined.
Plaintiff has specified a number of errors committed in the trial below, but the questions on appeal may be generally categorized as follows:
(1) Has plaintiff borne the burden of proving he is totally and permanently disabled because of accidental injuries received while employed by defendant?
(2) In the event plaintiff is entitled to recover, what is the proper method of computing his wages for the purpose of awarding him compensation?
(3) If plaintiff is entitled to compensation, has he shown that defendant, an uninsured employer, acted in an arbitrary and capricious manner, entitling him to an award of statutory penalties and attorney's fees?
We shall consider and discuss the foregoing questions in the order set forth.

PROOF OF DISABILITY
Our appellate courts have consistently held that an injured workman may be deemed totally and permanently disabled within the meaning of the compensation statute if he is unable to perform the ordinary duties of his trade or occupation without enduring substantial pain. Reed v. Calcasieu Paper Co., 233 La. 747, 98 So.2d 175 (1957) and numerous cases cited therein. With the above rule of law in mind, we have experienced little difficulty in finding that plaintiff has proved he is totally and permanently disabled. In connection with this proof it is appropriate to point out that much of the evidence consisted of the testimony of lay witnesses. While the courts have reiterated that there is a general rule of law that lay testimony is only admissible to prove the physical *503 condition of a plaintiff when the medical testimony is conflicting, this rule deserves explanation. Lay testimony is always admissible to prove that which the witness knows and about which he is legally capable of testifying. In this case there was no medical testimony offered by defendant nor was the testimony of plaintiff's medical expert contradicted. The lay witnesses testified to that which they had observed during the period from the date of the accident until date of trial.
When an employee's complaint is largely subjective, as in this case, one who sees and observes him is in many instances in a better position to testify whether or not he experienced pain at various times. In Williams v. Hudson East, 261 La. 959, 261 So.2d 629 (1972) the court accepted lay testimony in preference to medical evidence relative to whether an employee had proved residual pain resulting from an on-the-job accident. Here we have the testimony of plaintiff that the injury produced substantial pain which continued up to the date of trial and prevented him from doing heavy manual labor except in extreme pain. The two medical reports of Dr. King are corroborative of plaintiff's testimony. While the testimony of the chiropractor may be of little value from a medical standpoint, it does tend to prove plaintiff's initial injuries were substantial. The lay witnesses presented by plaintiff uniformly testified that he was in daily pain from the day of the accident to the day of trial.
Defendant did not come forward with any evidence to overcome that offered by plaintiff. As previously stated, the only witnesses introduced by defendant in an effort to establish plaintiff's physical condition and lack of disability, were personnel of the construction company who merely testified he had performed manual labor for this company after his injuries and prior to the trial.
We find the great weight of evidence substantiates that plaintiff was totally and permanently disabled on the date of trial.

COMPUTATION OF WAGES AND COMPENSATION BENEFITS
Louisiana Revised Statutes 23:1021(11) provides:
"`Wages' means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows: (a) If the employee is paid on an hourly basis, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury or forty hours, whichever is greater; * * *."
Plaintiff was paid on a weekly basis at $1.80 per hour. Under the above provision his weekly wage, computed on a 40-hour week, equals $72, which is greater than his wage rate if computed on the number of hours he actually worked in the four weeks preceding the accident. The amount of compensation to which he is entitled is 65% of his weekly wage, or $46.80.
Louisiana Revised Statutes 23:1202, as amended in 1968, provides the maximum compensation to be paid an injured employee for injuries occurring subsequent to December 31, 1969 shall be $49 per week. Therefore, plaintiff is entitled to be paid $46.80 per week for the period of his disability not exceeding 500 weeks. Louisiana Revised Statutes 23:1221(2) as amended Acts of 1968.

PENALTIES AND ATTORNEY'S FEES
When the claim for penalties and attorney's fees is leveled against the employer rather than an insurer, Louisiana Revised Statutes 23:1201.2 requires that the failure of the employer to pay compensation, or the discontinuance thereof, be arbitrary, capricious and without probable cause in order to justify imposition of such penalties and attorney's fees.
In determining whether the discontinuance of compensation payments was "arbitrary, capricious, or without probable cause" we must examine the events occurring *504 at the time Mr. McConnell ceased making payments on August 7, 1972. The record establishes that plaintiff went to work for K & K Construction Company from which he received his first pay check August 17, 1972, a few days after the compensation payments were stopped; that this information reached McConnell before he decided to stop making compensation payments; that plaintiff called defendant and asked about his compensation check and was told he would no longer receive them. Plaintiff worked for K & K for six weeks and was "laid off" or discharged on September 22, 1972. There is no evidence that McConnell knew of this discharge or that any further demand was made upon him to resume payments until suit was filed on January 3, 1973.
Answer to the petition was filed January 17, 1973. Thereafter plaintiff's attorney wrote to defendant's attorney thanking him for the "Answer" and making demand for resumption of compensation payments. A copy of the first letter of Dr. King was enclosed in the demand letter. Thus from August 1972 until January 1973 defendant had received no demand for payment nor notice of plaintiff's continuing disability.
Whether the discontinuance of compensation is arbitrary, capricious, or without probable cause depends primarily upon the facts existing and known to the employer at the time the payments were stopped. Lee v. Smith, 248 La. 16, 176 So.2d 413 (1965). Under the circumstances in the instant case we conclude defendant's actions were not arbitrary, capricious or without probable cause. See Welch v. Travelers Insurance Co. (La. App. 1 Cir. 1969) 225 So.2d 623; Eaves v. Louisiana Cypress Lumber Co., 253 La. 741, 219 So.2d 771 (1969).
For the reasons assigned the judgment of the lower court is reversed and there is now judgment in favor of plaintiff and against defendant for weekly compensation payments of $46.80 beginning on May 12, 1972, and continuing during the period of plaintiff's disability not to exceed 500 weeks, with legal interest on each weekly payment from its maturity until paid; less credit for eleven payments of $34.87, respectively paid on the following dates, all in the year 1972: May 24, May 30, June 12, June 16, June 23, June 30, July 7, July 14, July 22, July 28, and August 4.
It is further ordered there be judgment in favor of plaintiff and against defendant for the additional amount of $125 for medical expenses, with legal interest thereon from judicial demand until paid.
Plaintiff's demands against defendant for penalties and attorney's fees are rejected.
Defendant is cast with all costs.