340 So.2d 360 (1976)
Paul R. BAIER et ux.
v.
WOMAN'S HOSPITAL FOUNDATION et al.
No. 10975.
Court of Appeal of Louisiana, First Circuit.
November 15, 1976.
Rehearing Denied December 20, 1976.
Writ Refused February 18, 1977.
*361 Paul R. Baier, in pro per.
Charles W. Wilson, III, Baton Rouge, for defendant-appellee.
Before ELLIS, CHIASSON and PONDER, JJ.
ELLIS, Judge:
Plaintiffs Paul R. Baier and Helgard B. Baier bring this suit against Woman's Hospital Foundation, a non-profit, charitable corporation, for injunctive and declaratory relief, and for damages. From a judgment dismissing their suit, plaintiffs have appealed.
When this suit was first filed, on April 16, 1974, Mrs. Baier was pregnant, and expecting a child on or about May 17, 1974. She and her husband were both trained in the LaMaze technique of natural childbirth, in which the husband remains with his wife throughout labor and the delivery of the child. During this time, he assists and comforts his wife in various ways.
The original policies governing use of the delivery and operating suite at the hospital were written on May 13, 1971, and provided:
"No visitors can be allowed to observe operating or deliveries except M.D.s when indicated or R.N.s or OR/OB Technicians given approval by the Supervisor for a learning situation."
In the minutes of the meeting of the medical staff of the hospital on July 23, 1973, the following entry appears:
"HUSBANDS IN THE DELIVERY ROOM: There was much discussion concerning husbands in the delivery room. Dr. Miller moved that these requests for husbands in delivery be rejected. The motion was seconded and passed."
This suit was brought asking for a preliminary injunction restraining the defendant from interfering with Mr. Baier's access to his wife during delivery; for a permanent injunction to the same effect; for a declaratory judgment declaring the hospital's rule excluding husbands from the delivery room invalid on its face; and for damages.
A hearing was held on the rule for a preliminary injunction on April 29, 1974, and the rule was recalled, vacated and set aside. No appeal was taken from that judgment.
Mr. and Mrs. Baier then obtained the services of another physician, who practiced at the Lane Memorial Hospital in Zachary, Louisiana, and their baby was delivered there, with Mr. Baier in attendance, on May 2, 1974.
Shortly thereafter, the following regulations were adopted relative to those persons who would be admitted to the operating suite:
"In view of the fact that undue traffic in the operating suite bears a concomitant increase in the infection to mother and child, plus an invasion of privacy to other patients, these regulations are put forth to enhance the welfare of the patients attended at Woman's Hospital.
"Persons allowed admittance to the operating suite, besides the attending physician *362 and nurses assigned to the case are the following:
"1. Members of the East Baton Rouge Medical Society.
"2. Doctors in good standing from another community, if vouched for by a member of the medical staff of Woman's Hospital.
"3. Any prominent physician visiting in this area.
"4. Medical students under the proper supervision of the attending physician, or under the same supervision as residents.
"5. Properly supervised student nurses at approved scheduled classes.
"Exceptions to the above will be cleared with the chief of staff, and subject to the approval of the Executive Committee.
"Any physician member who violates the above rule shall be subject to disciplinary action by the Executive Committee."
The foregoing regulations were those in effect when the case first came to trial on its merits on June 17 and July 18, 1975.
Woman's Hospital is owned and operated by the Woman's Hospital Foundation, a private, non-profit, charitable corporation. When the hospital was constructed, 1.6 million dollars of Hill-Burton funds were used in connection therewith. The hospital is licensed by the State of Louisiana, but its operation is financed entirely out of its income and any donations which it may from time to time receive. All regulations for its internal operation are made by the Board of Directors or by the medical staff. There are no state or federal regulations relative to who may be present in a delivery room at the time of birth.
Plaintiffs take the position that we have the authority to inquire into the propriety of the regulations complained of herein under both state and federal law. We think it clear that if "state action" is involved herein, we have the authority to examine the regulations in the light of the protection accorded plaintiffs by the Constitutions of the United States and of the State of Louisiana.
The only factual elements in the case on which "state action" can be based are the use of 1.6 million dollars in Hill-Burton funds in the construction of the hospital, and the fact that the hospital is licensed by the State of Louisiana. In the recent case of Greco v. Orange Memorial Hospital Corporation, 513 F.2d 873 (5th Cir. 1975), the hospital involved adopted a rule preventing use of its facilities for non-therapeutic abortions. The hospital was privately operated by a corporation which leased the land and buildings from Orange County, which owned them. The facility had been built with over one million dollars in Hill-Burton funds and 1.762 million dollars raised by the sale of county hospital bonds. The court found that the hospital corporation was responsible for its own up-keep and operation, and that the county was held harmless from liability arising from the operation under the terms of the lease.
After recognizing the principle of law that there must be a close relationship between state regulation and the challenged activity of the regulated body, the court in the Greco case found that because the state exercised no influence on the policy of the hospital with reference to abortions, no such close relationship existed so as to make the abortion regulation constitute "state action".
We think the Greco case to be dispositive of the issue of "state action" in this case. There is less governmental involvement in the instant case than in the Greco case, and the application of the same principles of law must lead to the same result.
It follows that plaintiffs' constitutional arguments as to the infringement of their right of marital privacy, and denial of equal protection of the laws must fall, since these principles apply only when state action is present and not to private regulation of private interests.
Our attention has been called to the case of Fitzgerald v. Porter Memorial Hospital, 523 F.2d 716 (7th Cir. 1975), in which a public hospital's rule excluding husbands from the delivery room was challenged by plaintiffs desiring to use the LaMaze method of childbirth. The reason advanced for and against the rule are the same as those presented by the parties herein. The court said:
"We hold that the so-called right of marital privacy does not include the right of *363 either spouse to have the husband present in the delivery room of a public hospital which, for medical reasons, has adopted a rule requiring his exclusion."
It would therefore appear that even if "state action" were present, plaintiffs would have no right to the relief sought herein under the constitutional provisions relied on.
Plaintiffs suggest that in any event we have the authority to intervene in the internal affairs of the hospital, in the event that its administrative regulations are arbitrary or capricious.
In the only Louisiana cases dealing with the regulations of a private medical corporation, Clark v. Physicians and Surgeons Hospital, Inc., 121 So.2d 752 (La.App. 2nd Cir. 1960) and Clark v. Physicians and Surgeons Hospital, Inc., 131 So.2d 144 (La.App. 2nd Cir. 1961), the court held that a private hospital corporation "clearly has the right to adopt rules and regulations for its administration, including the right to exclude its use by licensed physicians for any cause it deems necessary."
The Hospital Licensing Law, R.S. 40:2100 et seq., does not bestow on the State of Louisiana any specific authority over the internal administrative policies of private hospitals. The record reflects that the responsible state agency takes a "hands off" attitude toward the policy of Woman's Hospital relative to the exclusion of husbands from the delivery rooms of its operating suite. In fact, we find nothing in the record, or at law, which compels the defendant hospital to accept Mrs. Baier as a patient, much less accede to plaintiffs' demand in this case.
There may be circumstances in which judicial intervention in the internal administrative affairs of a private hospital may be justified, but if so, they do not exist in this case. At best, plaintiffs have shown that there exists a difference of opinion among well qualified expert witnesses as to whether or not the design of the facilities of Woman's Hospital is such as to admit of free access for husbands to the delivery room. The trial judge, who heard the witnesses and visited the operating suite, found that there was nothing unreasonable about the rule excluding husbands, and his conclusion is fully supported by the evidence. Even if we had the authority to substitute our judgment for that of the governing body of the defendant hospital, we would not do so in this case.
Plaintiffs object to the witness fees of the experts called by defendants being taxed as costs, alleging that their interests in the case were too closely aligned with that of the defendant hospital to justify assessing a fee. The point is not argued in brief, and we assume, has been abandoned.
The judgment appealed from is affirmed at plaintiffs' cost.
AFFIRMED.

ON REHEARING
Plaintiff alleges that we incorrectly assumed that he had abandoned his specification of error that no expert witness fees should be allowed to doctors practicing at the defendant hospital who were called as experts on behalf of defendant. These physicians were called and recognized as expert witnesses by the Lower Court, who gave weight to their testimony as such, and who awarded them expert fees. We find no error.
REHEARING REFUSED.