424 So.2d 1161 (1982)
Joseph H. PATIN, Jr.
v.
CONTINENTAL CASUALTY COMPANY.
No. 82 CA 0299.
Court of Appeal of Louisiana, First Circuit.
December 21, 1982.
Writ Denied February 23, 1983.
*1162 Arthur Cobb, Baton Rouge, for plaintiff-appellee Joseph H. Patin, Jr.
Paul H. Jantz, Baton Rouge, for defendant-appellant Continental Cas. Co.
Before LOTTINGER, COLE and CARTER, JJ.
CARTER, Judge.
This is an appeal from a judgment in favor of plaintiff, Joseph H. Patin, Jr., and against defendant, Continental Insurance Company.[1] The trial court rendered judgment in favor of plaintiff for permanent partial disability for a maximum of 450 weeks payable at the rate of $141.00 per week, plus penalties of 12% on the past due weekly payments from October 28, 1981 until paid and attorney's fees. The defendant appeals contending that the trial court erred in awarding plaintiff permanent partial disability under the general disability provisions of LSA-R.S. 23:1221(3), but should have awarded compensation for loss of a function of a limb under LSA-R.S. 23:1221(4). The defendant also contends that the trial court erred in awarding plaintiff penalties and attorney's fees.
*1163 Plaintiff contends that the trial court correctly determined that he is permanently partially disabled under LSA-R.S. 23:1221(3) and is entitled to penalties and attorney's fees.
The issues on appeal are:
(1) The extent of plaintiff's disability.
(2) Should penalties and attorney's fees be allowed?
The plaintiff, a carpenter employed by Leo M. Patin, was injured on December 13, 1978, when he fell from a bench while at work, fracturing his right forearm (comminuted distal radius fracture). On the date of the accident, plaintiff saw Dr. Barry M. Rills, an orthopedic surgeon, who performed a closed manipulation of plaintiff's right forearm and applied a long arm cast. Dr. Rills next saw plaintiff on December 15 at which time the cast was bivalved because of swelling. Plaintiff was seen again on December 21 and then hospitalized on December 27 for a closed reduction and percutaneous pinning of the right forearm in an attempt to correct the volar tilting of the right arm. Between January 9, 1979 and April 4,1979, plaintiff was seen by Dr. Rills a total of six times. In the course of these various visits and examinations, the plaintiff was found to have a good alignment of the fracture, but was experiencing considerable pain, swelling and limited motion in the wrist and hand.
On February 14, 1979, the pins were removed and plaintiff started an exercise program which was continued throughout his treatment. On April 4, 1979, plaintiff was allowed to try to return to work, but was limited to light duties. In May of 1979, Dr. Rills again saw plaintiff, finding little improvement and recommended plaintiff be examined by Dr. Daniel C. Riordan, an orthopedic surgeon specializing in surgery of the hand.
Dr. Riordan examined plaintiff on June 14, 1979, and reported that plaintiff had a good reduction and the fracture had healed. He advised plaintiff to continue exercising and using the hand, and that in six to nine months he should have painfree motion without swelling.
Between June and August of 1979, Dr. Rills testified that he saw plaintiff every two to three weeks because of complaints of pain and swelling. On September 9, 1979, plaintiff was hospitalized by Dr. Rills for a carpal tunnel release to relieve pressure on the nerve at the wrist near the fracture site that was causing pain and numbness in the hand. After the operation, plaintiff was continued on his exercise program and on the anti-inflammatory drug which had been prescribed.
In September, 1980, a second carpal tunnel exploration was performed on plaintiff by Dr. Rills. Plaintiff was continued on exercises and anti-inflammatory drugs. Dr. Rills noted that there was still considerable pain in the right wrist, but that plaintiff's right hand had normal sweating patterns indicating no further nerve pressure.
Between September, 1980 and January, 1981, Dr. Rills saw plaintiff weekly at first because of the pain, and then monthly. On January 27, 1981, plaintiff was referred again to Dr. Riordan for re-examination. Dr. Riordan concluded that no further surgical treatment was needed, but that plaintiff should continue with resistance exercises, swinging hammer and using weights. The doctor speculated that, with the exercises, plaintiff would probably have pain for another three to four months, and thus it would not be safe for him to climb, but he could do carpentry work on the ground.
In February, 1981, after examination, Dr. Rills found plaintiff to be essentially normal except for some mild limitation of motion and mild atrophy of muscles in the right thumb. Plaintiff was also found to be of fair strength. Dr. Rills told plaintiff at this time that he could return to light carpentry duty. Dr. Rills sent plaintiff to vocational rehabilitation since it had been many months since he had been able to perform carpentry work.
Plaintiff attended vocational rehabilitation once but could not continue because of a back injury sustained in an automobile accident in April, 1981. On May 5, 1981, Dr. Rills examined plaintiff in connection *1164 with his back injury, which examination included a cursory check of plaintiff's right hand and wrist. This examination revealed good motion and strength in the right hand and wrist.
Dr. Riordan saw plaintiff again on June 2, 1981, at which time he had no further recommendations or treatment as concerns the wrist injury. Dr. Riordan determined that plaintiff had a permanent partial loss of function of the right hand and forearm which he estimated at a maximum of 20%. Dr. Rills concurred with this as a "maximum" disability estimate.
Continental Insurance Company paid the plaintiff benefits of $141.00 per week for 150 weeks under LSA-R.S. 23:1221(4) for loss of function of a limb. Continental contends that any disability that is preventing plaintiff from returning to work at this time is a result of the automobile accident in which plaintiff was involved in April, 1981, and was not work-related.
LSA-R.S. 23:1221(3), as amended, provides that an employee is deemed partially disabled if he is unable "to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience..."
Also, an injured employee is not required to work in substantial pain. Calogero v. City of New Orleans, 397 So.2d 1252 (La.1980); Lawless v. Steel Erectors, Inc., 254 La. 37, 222 So.2d 849 (La.1969); Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1 (La. 1953). A worker is partially disabled where he would experience substantial pain when working in his former occupation, but where he could work in other types of jobs without experiencing such pain. McBroom v. Argonaut Ins. Co., 370 So.2d 212 (La.App. 3rd Cir.1979), writ denied, 371 So.2d 1342 (La.1979); Conlay v. Houston General Ins. Co., 370 So.2d 196 (La.App. 3rd Cir.1979).
In two recent cases[2], the Supreme Court found claimants to be partially disabled when work-related injuries prevented them from performing significant physical tasks which were expected by their employers and important to the effective performance of their work, even though the physical tasks required were incidental to the main employment.
Applying the above to the facts of this case, we conclude that the trial court's finding that plaintiff is permanently partially disabled is correct. The plaintiff testified that his arm swells and is painful when he attempts to use his arm in performing certain tasks required of a carpenter. Numerous witnesses for the plaintiff stated that they knew plaintiff was unable to perform some aspects of carpentry work because of his arm. Plaintiff's usual and customary occupation is carpentry which requires the use of his right arm. With the disability plaintiff suffers, he has difficulty swinging a hammer, using a saw, climbing a ladder, or moving the heavy materials used in the carpentry business. Two of plaintiff's witnesses testified regarding the unusual physical exertion necessary in carpentry work, and as to the observable pain plaintiff experiences when he attempts to use his right arm in performing certain carpentry tasks. Since the time plaintiff has been employable, he has been involved in work requiring exertion, usually carpentry work, which necessarily requires the use of two good strong arms. Because of the accident which plaintiff suffered on December 13, 1978, he has been limited in the use of his right arm, experiencing some pain, which is accompanied by local swelling around the wrist.
Physical inability to return to work and inability to return to work due to substantial pain are questions of fact, the determination of which was made by the trial court, and will not be disturbed unless clearly wrong. Crump v. Hartford Acc. & Indem. Co., 367 So.2d 300 (La.1979); Kelly *1165 v. International Union, Etc., 386 So.2d 1060 (La.App. 3rd Cir.1980).
We do not agree with the insurer's argument that plaintiff's injury falls only under LSA-R.S. 23:1221(4)(o) for the loss of a function of a limb. The disability provisions and the specific loss provisions are parallel remedies designed to compensate an employee for his loss of earning capacity. Where an employee can show that the physical injury from which he is suffering causes appreciable employment disability, the employee is allowed to recover under which provisions affords him greater compensation. Jacks v. Banister Pipelines America, 418 So.2d 524 (La.1982); Farrar v. Guy Atkinson Company, 325 So.2d 893 (La.App. 2d Cir.1976); 2 Larson, Workmen's Compensation Law, § 58.25 p. 10-285.
We find the evidence supports the trial court's conclusion that plaintiff is permanently partially disabled as a result of a work-related accident which prevents him from performing all the duties in which he was engaged when injured as well as those for which he is fitted by education, training, and experience. The back injury suffered by the plaintiff as a result of the automobile accident, although providing perhaps another disability for this plaintiff, is not an intervening and superceding cause of plaintiff's disability.
The trial court properly granted the insurer a credit for the 150 weeks at $141.00 per week previously paid to the plaintiff under the specific loss provision. This credit is effected by shortening the period during which partial disability compensation is payable by the number of weeks compensation was paid under the schedule. Jacks v. Banister Pipelines America, supra; Stracener v. U.S. Fidelity & Guaranty Co., 420 So.2d 1101 (La.1982).
When a claim for penalties and attorney's fees is levied against the insurer, LSA-R.S. 22:658 requires that the failure of the insurer to pay compensation, or the discontinuance thereof, be arbitrary, capricious and without probable cause in order to justify imposition of such penalties and attorney's fees. This statute is penal in nature and therefore must be strictly construed. The burden of proof is on the claimant to prove that the failure to pay or the discontinuance of payments is arbitrary, capricious, and without probable cause. Breaux v. Marine Elec. & Reliance Ins. Co., 369 So.2d 196 (La.App. 3rd Cir.1979), writ refused, 371 So.2d 1344, (La.); Henley v. F.G. Sullivan, Jr., Contractor, 385 So.2d 497 (La.App. 1st Cir.1980). In determining whether the discontinuance of compensation payments was "arbitrary, capricious, and without probable cause," we must examine the facts existing and known to the insurer at the time payments were ceased. Arthur v. McConnell, 286 So.2d 499 (La. App. 2d Cir.1973).
The termination of compensation payments was based on the medical reports of one of plaintiff's treating physicians, Dr. Riordan, which reported that plaintiff was able to return to work as a carpenter. This opinion was also shared by the primary treating physician, Dr. Rills. Testimony revealed that the defendant chose to pay plaintiff full compensation under LSA-R.S. 23:1221(4) for loss of an arm, even though medical reports revealed that plaintiff was able to use his right arm, subject to a "maximum" 20% disability of the arm. Defendant's actions in terminating payment of worker's compensation based upon all medical evidence available was justified and thus cannot be said to be "arbitrary, capricious, and without probable cause." Thomas v. McInnis Bros. Const., Inc., 401 So.2d 522 (La.App. 2d Cir.1981). The dispute over the extent of plaintiff's disability involves a conflict between the medical evidence and reports and the testimony of the plaintiff and his witnesses concerning his inability to perform all duties of carpentry work because of the injury to his right wrist and forearm. It is well established that an insurer cannot be penalized by taking close factual questions to the courts for decision and for relying upon a valid defense. Dupont v. Ebasco Services, Inc., 411 So.2d 605 (La.App. 4th Cir.1982).
*1166 The trial court was clearly wrong in finding defendant's withholding of additional compensation payments as being arbitrary, capricious, and without probable cause, and awarding penalties and attorney's fees.
For the foregoing reasons, we affirm that portion of the trial court judgment which found that plaintiff is entitled to workmen's compensation benefits for permanent partial disability at the rate of $141.00 per week for a maximum of 450 weeks, subject to a credit for the 150 weeks defendant has previously paid. Legal interest shall accrue on all past due installments owed from date due until paid. We reverse the trial court judgment awarding penalties and attorney's fees.
Costs of this appeal are to be paid one-half by appellant and one-half by appellee.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[1] Although the proceeding carries the caption "Joseph H. Patin, Jr. versus Continental Casualty Company," the proper defendant is "Continental Insurance Company." This correction was made in plaintiff's amending and supplemental petition filed on November 16, 1981.
[2] Dodd v. Nicolon Corporation, et al., 422 So.2d 398 (La.1982); Naquin v. Uniroyal, Inc., 405 So.2d 525 (La.1981).