454 So.2d 156 (1984)
Verna COOPER
v.
AMI, INC. and Ranger Insurance Company.
No. 83 CA 0876.
Court of Appeal of Louisiana, First Circuit.
June 26, 1984.
Rehearing Denied August 24, 1984.
Writ Denied November 9, 1984.
*158 Thomas B. Waterman, Ponchatoula, for plaintiff-appellee, Verna Cooper.
Alton B. Lewis, Jr. of Pittman, Matheny, Lewis & Moody, Hammond, for defendants-appellants AMI, Inc. and Ranger Ins. Co.
Before PONDER, WATKINS and CARTER, JJ.
PONDER, Judge.
In this worker's compensation case, defendants appealed a judgment awarding plaintiff unpaid medical expenses and an increase in compensation benefits, plus penalties and attorney's fees. Plaintiff answered, requesting an increase in the amount of attorney's fees.
The issues are: (1) whether plaintiff's injury was causally related to an accident arising out of her employment; (2) whether surgery performed to treat the injury was necessary; (3) whether defendants were arbitrary and capricious in refusing to pay the surgical expenses; (4) whether the amount of compensation benefits paid by defendants was incorrect; (5) whether admitting testimony on that issue was an improper expansion of the pleadings; (6) whether penalties were properly assessed against defendants for having paid the incorrect amount; (7) whether certain documentary evidence was improperly entered into the record; and (8) whether $3,500.00 in attorney's fees is excessive.
We amend and affirm.
There is no dispute that plaintiff suffered back injury during the course of her employment as a nurses' aide, which was diagnosed as acute lumbosacral strain. Dr. Ferachi, her initial treating physician, also diagnosed degenerative disc disease, revealed by x-rays showing a narrowing of the L5-S1 disc space. Plaintiff complained of low back pain but a straight leg raising test was negative and neurological examination was normal. When plaintiff continued to complain of pain, Dr. Ferachi, an orthopedist, sent her to a neurologist for an electromyelogram (EMG) and nerve conduction study. Both were negative and Ferachi eventually released her from treatment, six weeks after her injury.
About six weeks later plaintiff was examined by Dr. Llewellyn, a neurosurgeon, who observed muscle spasm, restricted range of motion in the lower back, weakness in the right leg and a positive leg raising test for both legs. Plaintiff complained of pain radiating from her lower back into her legs. On the basis of her history and complaints and his own observations, Dr. Llewellyn believed plaintiff had suffered a ruptured disc which might require surgery. However, to confirm his diagnosis, he scheduled her for hospitalization and testing.
Prior to the testing, defendants sent plaintiff to another neurosurgeon, Dr. Clifford. After conducting a physical examination, Dr. Clifford concluded that plaintiff's symptoms were hysterical in nature. He believed that neither degenerative disc disease nor a ruptured disc would have resulted in plaintiff's symptoms and reactions.
*159 When plaintiff subsequently entered the hospital for testing, an EMG, x-rays, CAT scan and nerve conduction study were performed. Only the CAT scan was positive. According to the radiologist who interpreted it, the CAT scan revealed bulging disc material at the L5-S1 site which directly impinged upon the dural sac which encompasses the nerve roots. He testified that in his opinion, the disc material was compromising the nerve roots themselves. Dr. Llewellyn agreed and scheduled plaintiff for surgery. At this time, plaintiff was also diagnosed as a diabetic.
Prior to the surgery, defendants sent plaintiff to yet another neurosurgeon, Dr. Levy, who examined her and took x-rays. He found the x-rays to be "virtually normal" and did not believe plaintiff's displayed symptoms were indicative of a ruptured disc. He recommended against surgery and suggested that a myelogram be performed to confirm the CAT scan results.
However, Dr. Llewellyn operated as scheduled, at which time he discovered and removed an irreparably torn portion of the L5-S1 disc, which he testified was positioned to compress the fifth lumbar nerve root. Plaintiff thereafter experienced general relief from her complaints, but at time of trial was still undergoing rehabilitative therapy. Defendants refused to pay the expenses of the surgery.
Defendants contend that plaintiff failed to carry her burden of showing that the ruptured disc was causally related to her on-the-job injury. They do not seriously contest the fact that she suffered a lumbosacral strain by lifting a patient in the course of her employment. However, they argue that plaintiff had recovered from that "mild" strain by the time Ferachi released her and that the subsequent manifestation of new symptoms could only mean that she suffered another, unrevealed, trauma to her back after her release. Defendants attack her credibility and rely upon the opinions of their medical experts that plaintiff's ruptured disc was not caused by the reported injury.
The plaintiff-employee in a workmen's compensation case bears the burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. Prim v. City of Shreveport, 297 So.2d 421 (La.1974). Furthermore, medical testimony must be weighed in the light of other credible evidence of a nonmedical character, such as a sequence of symptoms or events, in order to determine probability judicially. Schouest v. J. Ray McDermott & Co., 411 So.2d 1042 (La.1982).
Our perusal of the record does not convince us that the trial court was clearly wrong in concluding that plaintiff's ruptured disc was caused by her on-the-job injury.
Defendants next contend that the trial court erred in concluding that the surgery was necessary. LSA-R.S. 23:1203(A).[1] They base their argument upon the alleged inconsistency of plaintiff's symptoms, as manifested to the various physicians who examined her; the negative results of the EMG exams and nerve conduction studies; the alleged insufficiency of the CAT scan as a diagnostic device; and the relief of symptoms arguably unrelated to the surgery.[2]
Dr. Llewellyn found that the CAT scan showed impingement upon the nerve-containing dural sac at the L5-S1 disc space by a ruptured or torn disc. He testified that a diabetic will likely experience greater discomfort from nerve compression than those *160 without the disease. He believed that a myelogram was superfluous when a CAT scan was positive (an opinion shared by the consulting radiologist, Dr. Fortenberry); further, he testified that the risks involved in a myelogram are greater for a diabetic. Despite the negative results of the EMG exams and the nerve conduction studies, he believed that plaintiff's clinical symptoms, interpreted in conjunction with the CAT scan results, required surgery. He did in fact discover an irreparably torn portion of the L5-S1 disc and excised it. He testified that a torn disc, as opposed to a ruptured disc, will not respond to conservative treatment but instead requires surgery. The operation provided plaintiff with immediate relief from most complaints, including the low back pain.
There was a clear difference of opinion among equally qualified physicians; however, we do not feel the trial court was manifestly wrong in relying upon Dr. Llewellyn's testimony in making the determination that the surgery was necessary.
Defendants claim that the trial court erred in assessing penalties and attorney's fees for their refusal to pay the costs of plaintiff's surgery. They argue that: (1) they were not arbitrary and capricious and did not act without probable cause in relying upon the recommendations, by the several physicians who examined plaintiff, against immediate surgery, and (2) plaintiff failed to submit evidence of a written demand for payment, a statutory prerequisite to an award of penalties and attorney's fees under LSA-R.S. 23:1201.2.
The applicable statute in this instance is R.S. 22:658,[3] not R.S. 23:1201.2. The statute is penal in nature and thus must be strictly construed. Patin v. Continental Cas. Co., 424 So.2d 1161 (La.App. 1st Cir.1982), writ denied 429 So.2d 145 (La.1983). An insurer should not be penalized for taking close factual questions to the courts for decision and relying upon a valid defense. Patin, supra; Williams v. Cinclare Central Factory, 422 So.2d 1226 (La.App. 1st Cir.1983), writ denied 426 So.2d 179 (La.1983).
We believe that the defendants were justified in relying upon the opinions of four physicians that surgery was not indicated. Although the trial court ultimately decided the close factual issue of the necessity of surgery against the defendants, their refusal to pay was grounded on a bona fide dispute between qualified physicians, which is a valid defense in this instance. We find that the trial court committed manifest error in finding defendants' conduct arbitrary and capricious and awarding penalties and attorney's fees.[4]
Defendants contend that the trial court erred in admitting, over their objection, certain testimony tending to prove that plaintiff had not been receiving the correct amount of weekly compensation, on the grounds that such testimony expanded the scope of the pleadings. Timely objection, coupled with the failure to move for an amendment of the pleadings, is fatal to an issue not raised by the pleadings. Gar Real Estate and Ins. Agency v. Mitchell, 380 So.2d 108 (La.App. 1st Cir.1979). Plaintiff did not move for amendment of the pleadings.
*161 Whether evidence is within the general issues raised by the pleadings is usually a matter left to the discretion of the trial court. Huhn v. Marshall Exploration, Inc., 337 So.2d 561 (La.App. 2d Cir.1976), writ denied 339 So.2d 854 (La. 1976). Although plaintiff made no specific allegation that the amount of benefits being paid was incorrect, she did allege that she had been receiving the sum of $84.50 per week, and then prayed for the court to award her the sum of $91.90 per week in benefits. Defendants were provided with sufficient notice that plaintiff intended to raise the issue at trial. We find no abuse of discretion in the trial court's admission of the testimony.
Defendants contend the trial court erred in admitting two documents identified by plaintiff as check stubs received from her employer, purportedly showing payment of wages for the three weeks immediately prior to her injury. Defendants objected on the grounds that there was nothing in the documents to identify their preparer or their relation to any of the parties. Trial court overruled the objection after plaintiff identified the social security number printed on the check stubs as her own. On appeal in brief, defendants argue only that the documents are inadmissible on the grounds of hearsay.
The specific grounds for objection to admission of evidence must be made at the time the court makes its ruling thereon. LSA-C.C.P. art. 1635; Laumann v. Sears, Roebuck & Co., 391 So.2d 954 (La.App. 4th Cir.1980). Different grounds for objection cannot be asserted on appeal. Also, assignments of error neither argued nor briefed are deemed abandoned on appeal. State v. Wright, 445 So.2d 1198 (La. 1984); Baier v. Woman's Hospital Foundation, 340 So.2d 360 (La.App. 1st Cir. 1976), writ denied 342 So.2d 224 (La.1977). This assignment of error thus has no merit.
Defendants urge as error the trial court's ruling that plaintiff was entitled to additional compensation benefits in the amount of $16.69 per week, on the grounds that the ruling is unsupported by the evidence.
It appears that the trial court determined plaintiff's average weekly wage in accordance with the provisions of LSA-R.S. 23:1021(7).[5] Apparently, the trial judge determined an average of the actual hours worked by plaintiff in the four weeks preceding her injury by accepting her testimony that she worked forty, forty, forty-eight and forty-eight hours in the last four weeks she worked. We cannot say that the trial court committed manifest error in accepting the testimony of the plaintiff against that of the defendants on this issue, and arriving at the sum that he did.
Defendants next urge as error the trial judge's determination that they were arbitrary and capricious in failing to pay the correct amount of compensation and his consequent award of penalties and attorney's fees. Whether an insurer's conduct justifies an award of penalties and attorney's fees is a factual question on which we will not disturb the trial court's finding absent manifest error. Henson v. Handee Corp., 421 So.2d 1134 (La.App. 2d Cir. 1982).
Defendants determined plaintiff's weekly benefits based upon a thirty-seven and one-half hour work week. However, at the time in question, the law provided that an employee's weekly wage must, at a minimum, be calculated upon a forty hour work week. LSA-R.S. 23:1021(7)(a). The fact that plaintiff was earning $3.45 per hour was not disputed. Under these circumstances, the insurer was arbitrary and capricious in failing to pay plaintiff at least two-thirds of $138.00 per week, or $92.00.
*162 Additionally, the claims adjuster received a letter from plaintiff's attorney November 4, 1981, informing him that the amount being paid was incorrect. Still, defendants failed to raise compensation payments even to the legal minimum. We do not find any manifest error.
Finally, defendants contend that the $3,500.00 awarded in attorney's fees is excessive. The award of attorney's fees under R.S. 22:658 is in the form of a penalty and the amount need not be proved. Fontenot v. Town of Kinder, 377 So.2d 554 (La.App. 3rd Cir.1979), writs denied, 379 So.2d 1102 (La.1979). However, the award of a reasonable fee is within the broad discretion of the trier of fact. Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65 (La.1983). We do not find abuse of discretion in this award but we decline to award additional attorney's fees for services rendered on appeal.
For the foregoing reasons, the judgment of the trial court is amended to delete the award of 12% penalties on the amount of past due medical expenses, and as amended, affirmed. Costs of this appeal are to be borne equally by plaintiff and defendants.
AMENDED AND AFFIRMED.
NOTES
[1] In pertinent part, LSA-R.S. 23:1203(A) provides:

"In every case coming under this Chapter, the employer shall furnish all necessary medical, surgical, and hospital services, ..."
[2] Plaintiff complained prior to surgery of pain in both arms. Dr. Levy testified that this complaint could not be related to a bulging disc at the L5-S1 level. Plaintiff stated that this pain was relieved by the surgery. Dr. Llewellyn attributed this pain to muscle or ligament sprain in the neck and indicated that such complaints are not uncommon in diabetics such as plaintiff.
[3] LSA-R.S. 22:658 provides, in pertinent part:

"All insurers issuing any type of contract ... shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss,..."
At the time in question, LSA-R.S. 23:1201.2 applied only to employers not covered by insurance. Such was not the case here.
[4] Since we rule favorably for the defendants on this issue, we need not address their contention of insufficient demand.
[5] At the time in question, LSA-R.S. 23:1021(7), in pertinent part, provided:

"The average weekly wage (of the injured employee) shall be determined as follows: (a) If the employee is paid on an hourly basis, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury or forty hours, whichever is greater; ..."