WATKINS, Judge.
This is a worker’s compensation suit. The trial court denied the plaintiff benefits and he has appealed alleging as errors the court’s failure to find him partially disabled under LSA-R.S. 23:1221(3), and to award attorney’s fees and penalties for the defendants’ arbitrary and capricious termination of benefits. Finding that the plaintiff did suffer a disabling work-related injury, we reverse.[1]
Clifton Foster was employed by Chambers Construction Company as a carpenter foreman. On July 8, 1982, while in the course and scope of his employment, he was carrying an aluminum extension ladder which struck an electrical power line. The 69,000 volt shock which Foster received from contact with this line caused second and third degree burns over thirty-four per cent of his body. During the forty days he was hospitalized in the Baton Rouge General Hospital Burn Unit he underwent several surgeries performed by Dr. Millard E. Byrd, Jr., under whose care he remained after discharge.
Foster resumed his employment on a limited basis in November, 1982, to work on an addition to Chambers’ office building. In December, 1982, Dr. Byrd first noted plaintiff’s complaints of weakness in the knees (the condition which plaintiff alleges is the reason for his inability to perform his normal duties as a carpenter foreman). It was also at this time that Dr. Byrd assigned a permanent disability rating of *1313 twenty to thirty per cent as to the plaintiff being able to perform unlimited duty. However, he felt that Foster could work in a supervisory position as long as it did not require bending, squatting or performing heavy manual labor. Plaintiff remained on limited duty with Chambers through January, 1983.
Plaintiff was seen by Dr. Byrd in March, 1983, at which time he was still complaining of weakness in his legs and additionally of pain in his right foot. Dr. Byrd referred the plaintiff to an orthopedist, Dr. J. Willard Dowell, who diagnosed the condition of his right foot as a Morton’s neuroma. He was unable to attribute the weakness in the legs to any orthopedic deficiency.
At the request of the defendant and its insurer, Zurich-American Insurance Companies, the plaintiff was examined in June, 1983, by Dr. Robert E. Hanchey, a neurosurgeon. Dr. Hanchey was unable to find any significant neuromuscular weakness and opined that Foster “could return to his previous duty assignment as strictly a supervisory construction foreman without attendant duties of any type of heavy labor.”
The plaintiff worked for Chambers three weeks in June, 1983. He testified that this work involved supervising the completion of jobs which his employer had undertaken but had no one else with his particular construction expertise to finish.
In July, 1983, Dr. Byrd reexamined the plaintiff finding his burns to be completely healed with no residual disability. He reported that plaintiff was still experiencing weakness in his legs. At that time, he thought that the weakness was not related to the electrical burns, but was unable to rule out that possibility with any degree of certainty. Since he felt the complaint was real, he referred Foster to Dr. Samuel J. Levert, Jr., a neurologist.
Dr. Levert initially examined Foster in July, 1983, at which time he opined that he “may have sustained some neurological damage related to the electrical injury. This has been known to occur weeks or months following the electrical injury. I suspect that this will be temporary and full recovery is anticipated.” He suggested that the plaintiff undergo further testing that Dr. Levert later performed in August, 1983, which revealed abnormal nerve response in the left leg. After the examination by Dr. Levert, but prior to the testing, Dr. Byrd, on August 9, 1983, reported to the insurer that Foster was still disabled, based upon the objective neurological findings of Dr. Levert.
The final examination by Dr. Levert occurred in October, 1983, at which time the plaintiff was complaining of increased weakness in the knees since his last visit and also of weakness in the right foot. In his report to the insurer, Dr. Levert stated that he talked with the plaintiff about his employment duties entailing much standing, walking, stooping, and bending, activities which Foster felt he was unable to perform due to the weakness in his legs. Although he felt that the plaintiff had improved during the period between visits, he stated that Foster did sustain neurological impairment as a result of the accident. As to the foot, he felt this weakness would not hinder his return to work.
Foster was reexamined by Dr. Byrd in February, 1984, complaining of the progressive worsening of the weakness in his legs. Feeling that the question of nerve injury resulting from the electrical accident was still unresolved, he again referred the plaintiff to a neurologist. Since Dr. Levert was no longer practicing with Baton Rouge Neurological and Neurosurgical Associates, the plaintiff was examined in April, 1984, by Dr. Allen S. Joseph, a neurosurgeon, who was a member of this group. He opined that Foster had a “perineal nerve lesion related to his electrical injury which may be exacerbated by an underlying radiculopathy.” Dr. James Robertson, a neurologist, performed the same tests as Dr. Levert had and found no improvement in the results. On the Attending Physicians Statement, Dr. Joseph answered negatively to questions regarding Foster’s return to his regular occupation on either a full or part-time basis, and indicated that he would be unable to return until June, 1984.
The last medical examination occurred one week prior to trial, at which time Fos *1314 ter again saw Dr. Hanchey who was “unable to confirm any ongoing neuromuscular weakness.”
Plaintiff, his wife, and Dr. Byrd were the only witnesses who testified at the trial. The payroll records of Chambers Construction for Clifton Foster along with the hospital and medical reports of the physicians seen by the plaintiff were entered into evidence. Defendants offered the deposition of Dr. Hanchey.[2]
Dr. Byrd reiterated his earlier findings of a twenty to thirty per cent disability because of the difficulty the plaintiff was having in bending, squatting and performing heavy manual labor as a result of the weakness in his legs. He further stated that although he was unsure initially that the weakness was related to the electrical burns, Dr. Levert’s findings had convinced him that the nerve damage could have occurred. His conviction was corroborated by the fact that from his experience in treating the plaintiff, he believed Foster was not a malingerer and had genuine complaints. As he stated, “But, he had troubles with his legs, and as he described his job to me, he had trouble doing it. He was superintendent of work and there were alot of things he could do, but the squatting and the bending, he had legitimate complaints. And the weakness, I think was legitimate.”
Clifton Foster testified that his duties as a construction superintendent involved a great amount of walking. They also entailed “hands on” work in demonstrating the proper techniques and methods to be used. He testified that he would now be unable to perform the activity in which he was engaged at the time of the accident— carrying an extension ladder. He is now in a partnership with his son in a television sales and service business. He testified that for about twenty years he performed work as a television repair technician on a part-time basis.
In its written reasons for judgment, the trial court denied benefits because of the plaintiffs failure to prove his inability to work. It is well established that on appellate review, the trial court’s factual findings as to disability are entitled to great weight and are not to be disturbed in the absence of manifest error. Westley v. Pressure Services, Inc., 452 So.2d 354, 356 (La.App. 1st Cir.1984). However, upon review of the record, we find that the trial judge was clearly wrong in finding that Foster was not partially disabled pursuant to LSA-R.S. 23:1221(3).
The links in the chain of causation required by the worker’s compensation statutes are: the employment causes the accident, the accident causes the injury, and the injury causes the disability. The claimant in a worker’s compensation proceeding bears the burden of proving the nature and extent of his disability by a preponderance of the evidence. The issue of whether or not he has carried this burden must be determined by examining the totality of the evidence, including both lay and medical testimony. Thornell v. Payne and Keller, Inc., 442 So.2d 536, 543 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1231 (La.1984). The plaintiff need not establish with expert testimony the exact cause of his disability in order for him to recover. Hammond v. Fidelity & Casualty Company of New York, 419 So.2d 829, 831 (La.1982).
In denying benefits, the trial court found that the plaintiff failed in showing his inability to work. This finding is erroneous based upon the definition of partial disability contained in LSA-R.S. 23:1221(3). An employee may be deemed partially disabled if he is unable to perform the same duties in which he was customarily engaged when injured or duties of the same or similar character for which he is fitted by education, training or experience. Mar *1315 tin v. H.B. Zachry Company, 424 So.2d 1002, 1006 (La.1982).
Although the physicians’ reports indicated that Foster could return to work, these statements were not unqualified. Both Dr. Byrd and Dr. Hanchey stated that the return to work could be on a limited basis only, without bending, squatting, or performing manual labor. The uncontra-dicted testimony of the plaintiff shows that an integral part of his job as carpenter foreman involved the exact duties which he was no longer able to perform without difficulty. See, Thomas v. RPM Corporation, 449 So.2d 18, 21 (La.App. 1st Cir.1984), writ denied, 450 So.2d 965 (La.1984); West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1147 (La.1979). The testimony of the plaintiff at trial indicated that he was at that time employed but in an occupation not as physically demanding as his prior job.
Plaintiff testified that when he did return to work, his activity was limited to “setting around” because of his inability to walk any great distance. He also testified that he attempted to do carpentry work on his sister-in-law’s flood-damaged home but was unable to complete the work because of his weakened physical condition.
For the above reasons, we find that the plaintiff has carried his burden in proving that he is partially disabled under LSA-R.S. 23:1221(3).
PENALTIES AND ATTORNEY’S FEES
In this second assignment of error, Foster alleges that the termination of benefits by the defendants was arbitrary and capricious, and, as such, makes them liable for penalties and attorney’s fees. If the termination is found to have been arbitrary, capricious, or without probable cause, the employer may be compelled to pay a penalty of twelve per cent of the total amount of the claim, together with all reasonable attorney’s fees incurred by the claimant in prosecution of the claim. In our opinion, the termination of benefits by the defendants was not arbitrary, capricious, or without probable cause. Therefore, they shall not be required to pay a penalty or the attorney’s fees incurred by Foster in the prosecution of this suit.
An employer’s conduct in discontinuing worker’s compensation benefits must be judged primarily upon the facts existing and known to him at the time the payments were stopped for purposes of determining whether statutory penalties are appropriate. Celestin v. Fireman’s Fund Insurance Company, 430 So.2d 1263, 1268 (La.App. 1st Cir.1983). See also, Chiasson v. Lafourche Parish Council, 449 So.2d 110, 114 (La.App. 1st Cir.1984).
At the time of termination of benefits, July 14, 1983, the medical reports of the physicians treating Foster indicated that he was able to return to work, although in a limited capacity. The question as to the extent of plaintiff’s disability is a close one and the employer and insurer should not be penalized for seeking judicial resolution of close factual questions. See, Cooper v. AMI, Inc., 454 So.2d 156 (La.App. 1st Cir.1984), writ denied, 459 So.2d 539 (La.1984).
BENEFITS DUE
Because we find that the plaintiff is partially disabled as a result of this accident, we must make a determination as to the amount of benefits to which he is entitled.
Since Foster was injured on July 8, 1982, he is entitled to weekly compensation benefits not to exceed 450 weeks from that date with credit for benefits previously paid and for those weeks in which actual wages were earned. Foster is entitled to compensation at the rate of 66%% of the difference between his weekly wages earned at the time of the injury and his weekly wages actually earned thereafter. LSA-R.S. 23:1221(3). The record indicates that at the time of the accident, plaintiff was paid $500 weekly. At the time of trial, he was earning a weekly wage of $200 in his television sales and service business. Thus, he is entitled to weekly compensation benefits equalling 66⅜% of the $300 difference in wages, or $200.
However, LSA-R.S. 23:1202(1)[3] provides that the maximum weekly compensation *1316 would be 66⅜% of the average weekly wage paid in all employment subject to the Louisiana Employment Security Law. The record is devoid of the average weekly wage as contemplated by LSA-R.S. 23:1202(2). Although the plaintiff was receiving $183.00 as weekly compensation benefits, there is no stipulation of the parties in the record as to that being the correct amount. Such a stipulation or a finding is especially important in light of the wording of LSA-R.S. 23:1221(3) which contemplates future wage earnings, an amount unknown to the defendants at the time compensation was being paid to the plaintiff.
Accordingly, we remand the case for a determination of the benefits to be paid to plaintiff, awarding interest from each date payment is due along with credits to the insurer and employer as provided in LSA-R.S. 23:1221(3) and 23:1206.
For the foregoing reasons, the judgment of the trial court is reversed and judgment is rendered in favor of plaintiff and against the defendants in solido decreeing plaintiff partially disabled. The case is remanded for a determination as to the benefits due to Clifton Foster. Costs of this appeal are to be borne by the defendants.
REVERSED AND REMANDED.

. At the outset, we note that the worker’s compensation statutes were amended by Acts 1983, 1st Extraordinary Session, No. 1, effective July 1, 1983. However, we have applied the law as it existed on the date of plaintiffs injury (July 8, 1982). At that time, LSA-R.S. 23:1221(3) provided in pertinent part as follows:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
[[Image here]]
“(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, during the period of disability, ... and not beyond a maximum of four hundred fifty weeks for such partial disability resulting from injury occurring on and after September 1, 1977; provided further that for any week during which the employee is paid any compensation under this subdivision (3) the employer shall be entitled to a reduction of one full week of compensation against the maximum number of weeks for which compensation is payable under this subdivision (3) and for any week during which the employee is paid no compensation, because of the employee’s actual earnings during that week, the employer shall not be entitled to a reduction for that week against the maximum number of weeks for which compensation is payable under this subdivision (3), and in no event shall the total number of weeks of compensation for such partial disability under this subdivision (3) be increased beyond the maximum number of weeks stated in this subdivision (3).
******
Additionally, the proper statute for the assessment of penalties and attorney’s fees in this case is LSA-R.S. 22:658 and not LSA-R.S. 23:1201.2 which on the date of accident was applicable only in those cases where the employer was not covered under a policy of worker’s compensation insurance which is not the situation presented here.

. This Court is not bound by the manifest error rule in evaluating evidence presented by deposition or stipulated medical reports since the trial judge is in no better position to assess credibility than an appellate court. Bridgewater v. Crown Zellerbach, 449 So.2d 515, 520 (La.App. 1st Cir.1984); F & S Offshore, Inc. v. Service Machine & Shipbuilding Corporation, 430 So.2d 1167, 1173 (La.App. 1st Cir.1983).

. On the date of accident, LSA-R.S. 23:1202 provided, in pertinent parts, as follows:
*1316 (1) The maximum compensation to be paid under this Chapter for injuries occurring on or after ... September 1, 1977, the maximum weekly compensation to be paid under this Chapter shall be sixty-six and two-thirds per centum of the average weekly wage paid in all employment subject to the Louisiana Employment Security Law and the minimum compensation shall be not less than twenty per centum of such wage, said maximum and minimum to be computed to the nearest multiple of one dollar....
(2) For the purposes of this Chapter, the average weekly wage in all employment subject to the Louisiana Employment Security Law shall be determined by the administrator of the division of employment security on or before August 1 each year as of the quarter ending on the immediately preceding March 31 of each year. The average weekly wage so determined shall be applicable for the full period during which compensation is payable when the date of occurrence of injury falls within the twelve month period commencing September 1 following the determination.